[Louisville & Nashville R. R. Co. v. Richardson.]

# Louisville & Nashville Railroad Company v. Richardson.

*Action by Employe for Damages for Personal Injuries.*

1. *Fellow servant exercising control. &c.*—On a trial under Code, § 2590, subd. 5, it appearing that the plaintiff, a wiper, was at work on a switch engine standing over an ash pit to be cleaned, that the engineer was on the ground packing a gland-valve, that a hostler on the engine opened the throttle and the steam blew out in plaintiff's face, and it not appearing that the hostler and engineer had any joint control of the engine. it was error to refuse to charge the jury that they could not both be in control at the same time, and that if the engineer was then in control the company was not liable.

2. *Same.*—There being no evidence that the hostler had any business on the engine, unless he was then in control of it. the court rightly refused to charge that the jury might find that he was not trespassing there, but still not in control

3. *Evidence of company's acquiesence in breach of rules.*—The company's verbal rule that hostlers should not move switch engines being proved, evidence that nevertheless they were in the habit of doing so was competent to show that the company acquiesced in their breach of the rule.

4. *Charges ignoring part of the evidence.*—Instructions that if the jury believed the evidence they must find that hostlers had orders not to move switch engines, ignoring the evidence that such orders had not been obeyed, were properly refused.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This suit was brought under subdivision 5 of § 2590 of the Code. There are two counts, differing in no essential respects except in the allegations of negligence. The first count charges, that on the 30th March, 1890, the plaintiff was an employe of the defendant corporation, and was engaged in rubbing and wiping grease off of a locomotive engine, as it was his duty to do; and while so employed, a person in the employment of the defendant, who had the charge, or who had control of said locomotive engine on defendant's track, carelessly, negligently and wantonly turned the throttle or valves of said steam engine in such manner as to cause the steam to be driven with great force, directly in plaintiff's face and eyes, and plaintiff was thereby scalded and burned about the head, face, shoulders and body, and the sight of plaintiff's right eye was thereby totally destroyed, &c.

The second count is of the same tenor with the first, except it charges, that the party in charge or control of the locomotive engine, carelessly and negligently turned the

VOL. C,

throttle or valve of said steam· engine, or moved the said engine in such manner as to cause the steam to be driven with great force, directly in plaintiff's face, &c.

The plea was the general issue.

The plaintiff testified that he was working for the defendant, on the 3rd of May, 1890, as a grease-wiper, wiping grease off of engines; that he was wiping an engine according to orders, when a hostler came and took a gland off, and was putting in some packing, while plaintiff was wiping the wheel that runs up under the steam chest, and the man on the ground said to the man on the engine, "Don't move this engine. I have the steam gland off, putting in packing;" then, while plaintiff was wiping and the hostler was putting in packing, still, the man on the engine gave the engine steam, and the steam blew out and struck plaintiff in the face; that the man putting in packing, ran the engine at night, and the one, up in the engine, ran it in the day time; that the engine was standing over the ash pit, where engines are generally wiped; that the man in the engine, whose name was Ed Wright, was the hostler for the day, and the hostlers roll the engines about the yard, whenever they are called on to do so; that he had seen Ed Wright do nothing else about there, but handle engines; that the plaintiff knew the difference between road and switch engines, and had seen the hostlers at work, frequently, in the yard, prior and up to the time he was hurt, handling and moving switch, as well as road engines; that he had seen Wright handling switch engines, all along up to that time, that he did it in the yard, every time it was needed, every day, up to the time plaintiff was hurt.

S. L. Stinson for defendant, testified that he was an engineer for the defendant, at the time plaintiff was hurt, and had charge of the engine that hurt him; that he was right there, and had charge of it at the time, was on the ground, had the gland valve off and was packing it; that he did not put on steam and did not know there was a man on the engine; that no one except himself, had the right to get on the engine, or to open the throttle; that it was a switch engine, and he did not direct any one to move it; that he had been off the engine but two or three minutes, when plaintiff was injured; that an engine can not be packed with steam turned on.

On the cross examination he testified, that Ed Wright was a hostler, and that hostlers handle road engines in the round house and yard; that when an engine comes in off the road, they run it over one of the pits, where it is cleaned out and the hostler takes it and puts it away; that witness was the engineer of the switch engine, and had taken it in there,

to get the fire box cleaned out, and to get coal, water and sand; that Ed Wright had no business on this switch engine, while in the yard for supplies, or to move it; that this engine had a fireman, who was standing right there.

T. H. Hall for defendant, testified that hostlers take charge of engines coming in off the road, and are not allowed to move any other engines; that witness was assistant foreman of the round house, at the time plaintiff was hurt; that plaintiff was working for witness from January to October; but witness stated, that he could not say, whether hostlers ever moved any other engines than road engines or not.

Ed Wright testified in behalf of defendant, that he was on the engine, at the time plaintiff was injured and turned the throttle of the engine to let the steam on to move the engine; that he was hostler; Stinson, the engineer, had charge of the engine; that witness had verbal orders, at and prior to that time, from the round house foreman, that hostlers should not handle switch engines, that is, should not move them; that the engineer was the only person who had the right to move the engine; that it was against the verbal orders he had received, to open the throttle at that time.

He stated on the cross examination, that the round house foreman gave him the orders, and he could not remember whether they were in writing or on the bulletin board, and witness had been working in the round house, a month. He also stated, (using his language largely), that it had not been the custom, to any extent, for hostlers to move switch engines in the yard, up to and prior to the time of plaintiff's injury, but he could not say how much; that he might have seen it done a time or two, but it was not often; that he was not furnished with any printed rules; that he could not say he had seen hostlers move switch engines every day. It was not a common practice.

O. B. Gifford for defendant, testified that he had been the master mechanic of defendant for three years; that hostlers, at the time plaintiff was hurt, had verbal orders not to handle switch engines; that he could not say, positively, that he had ever given Ed Wright verbal instructions, not to do so; that witness did not have superintendence over the round house, but of everything in the mechanical department, including switch and road engines, and it was the business of the foreman of the round house to inform new men of verbal rules, and he had given instructions to him in July 1890, that hostlers should not handle or move switch engines; that Ed Wright had been hostlering for the round house only a short time. Upon the introduction of all the

[Louisville & Nashville R. R. Co. v. Richardson ]

evidence the defendant requested the court to give, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1) "I charge you, gentlemen of the jury, that it is not necessary for you to believe that the hostler was a trespasser or intruder upon the engine, for you to come to the conclusion that he did not have charge or control of the engine." (2) "I charge you, gentlemen of the jury, that the hostler might have had, under the evidence, the right to get upon the engine, and at the same time would not, necessarily, have had charge and control of the engine, when upon the same." (4) "If you believe from the evidence that the engineer, Stinson, had the charge and control of the engine at the time the packing was blown out and plaintiff's eye was injured, then you must find for the defendant." (5) "I charge you, gentlemen of the jury, if you believe the evidence, you must find that defendant issued orders in July, 1890, that the hostlers must not move or handle switch engines." (6) "I charge you, gentlemen of the jury, that, as a matter of law, the hostler and engineer could not have had charge or control of the engine at the same time." (7) "If you believe the evidence you must find that at the time the plaintiff was injured there was in force a rule of the defendant forbidding a hostler to handle or move a switch engine." (10) "If the jury believe the evidence in this case, they can not find that it was a custom for hostlers on defendant's road to move switch engines at the time plaintiff was injured."

HEWITT, WALKER & PORTER, for the appellant.

R. H. KERR and J. Q. COHEN, for the appellee.

HARALSON, J.—There was evidence tending to show that hostlers had been in the habit, before plaintiff was injured, of indulging the practice of moving switch engines about the engine yard of defendant, from which the jury might reasonably have found, that the practice had come to the knowledge of the company and was pursued by its acquiesence, notwithstanding the fact, the jury might have believed from the evidence, that the company had promulgated verbal rules against such practice.

The question propounded to the witness, Ed. Wright, on his cross examination by plaintiff—"Was it the custom and habit of hostlers to move switch engines in the yard, up to and prior to the time of plaintiff's injury?" as for the objection made to it, that such custom of violating the rule would not tend to make the defendant liable, was properly

allowed.  And so, the other question propounded to plaintiff as a witness was proper, viz., "Had you seen Ed Wright handling and moving switch engines around there, in the yard before you were hurt, and up to that time?"  The object of these enquiries evidently was, to make it appear that hostlers, in the time enquired about, had been in the habit of indulging a practice of moving switch engines about the engine yard, from which the jury might reasonably believe, that the practice had, from long indulgence, come to the knowledge of the company, and was pursued by its acquiesence, notwithstanding they might further believe from the evidence, that the company had promulgated verbal rules against such a practice.— *Whitaker v. D. & H. C. Co.*, 126 N. Y. 544.  In this case it is well said, that, "A railroad company does not discharge its whole duty to the public, by merely framing and publishing proper rules for the conduct of its business and the guidance and control of its servants, but it is also required to exercise such a supervision over its servants and the prosecution of its business as to have reason to believe that it is being conducted in pursuance of such rules."— *Wabash v. McDaniels*, 107 U. S. 454.

The question as to what person, on the occasion of the injury to the plaintiff, had charge or control of the engine, is one of fact, properly left to the jury, with instructions under the evidence in the cause.  Generally, we would say especially when he is on and running the engine, or has the actual custody, that the engineer has control of it.  It may be, however, when he is not in the active manipulation of it, that other persons control it.  It will not do to say, therefore, as a matter of law *who* has the control or charge of an engine, at any particular time, when it is fairly inferrible from the evidence that either one or the other of two persons may have such control.  In each particular case, time, place and circumstance must determine the question of immediate control.—*L. & N. R. R. Co. v. Mothershed*, 97 Ala 261.  In this case the evidence tends to show, that the engine was a switch engine ; that it was over an ash pit to be cleaned; that the engineer was on the ground, on one side having a gland-valve packed; that Ed Wright was a hostler, whose duty it was to move engines about the yard; that he had orders not to move switch engines ; that notwithstanding these verbal orders he did move them, frequently; that he got on the engine and opened the throttle for the purpose, as he swears, of moving the engine, and caused the damage to the plaintiff.  Under these circumstances, the trial court instructed the jury,  "If Ed Wright was a mere intruder and had no authority on the engine, and

had no right there, and did not have charge or control of it, then any negligence he might have committed would not be imputed to the defendant, any more than if any other intruder had gone there and committed it." This instruction placed the matter before the jury in a legal and proper manner. They might have believed, under the evidence, owing to the view they took, and their belief of it, that Wright had or that he did not have instructions about moving switch engines in the yard, prior to the time of this injury; they might have believed, that he had control of the engine at the time he moved it, or that he was a mere intruder having no business on the engine, and these were questions falling properly within their adjustment.

Applying these principles to the charges requested, and it appears that charges Nos. 1 and 2 requested by defendant cannot be sustained. They are liable to confuse and mislead. Wright was either, under the evidence an intruder or he was rightfully there, and had charge or control of the engine; and the charges serve to impress the jury that he had the right to get on the engine, without having authority to do anything after he got there, whereas, if he had no authority to move the engine, the evidence is wanting to show that he had any business on it.

The third charge is not insisted on. The 8th and 9th are general charges, improper to be given where there is conflict in the evidence.

Nos. 5 and 7 were properly refused. If such orders were issued and such a rule was in existence, still there was evidence tending to show, that the company did not require obedience of them, and sanctioned their violation, which evidence the charges ignore.

No. 10 was properly refused, since there was evidence tending to show such a custom.

Nos. 4 and 6 assert correct propositions of law, the *sixth*, that the hostler and engineer could not have had charge or control of the engine at the same time; and the *fourth*, that if the engineer had charge and control of the engine at the time the injury was inflicted on plaintiff, then the jury must find for the defendant. The evidence shows that the act of the hostler alone caused the injury, and there is no evidence that any joint control or authority over the engine had, by any competent authority, been conferred on the hostler and engineer; and the proposition seems to be a plain one, that if such joint authority had not been thus vested in them, and the engineer, and not the hostler, at the time of the accident, was in control, then the hostler had no right to interfere to move the engine, and his conduct was that of a trespasser or intruder.

For the error in refusing these charges—4 and 6—the judgment must be reversed.

Reversed and remanded.