# St. L. & S. F. R. R. Co. *v.* McCrory.

*Damage for Injury to Employe.*

(Decided Nov. 14, 1911.   56 South. 822.)

1. *Release; Fraud; Evidence.*—The evidence in this case held to show that the servant, who had sustained the personal injury was induced to execute a release of his claim for personal injuries by a promise to furnish him with employment, and hence, to authorize a setting aside of the release for fraud where there was no intent to so employ him, and he was not so employed in fact.

2. *Same; Rescission; Restoration.*—One who seeks to rescind a release for fraud must make speedy restoration to the other party of anything received under it; he cannot repudiate the release and hold the benefits derived therefrom.

3. *Same; Tender.*—Where it appeared that the consideration received for a release would not be received by the party furnishing it, this fact excuses a failure to make a tender as a condition to the right to rescind.

4. *Same; Laches.*—The evidence in this case stated and held to justify a finding that the party executing the release, acted with reasonable promptness in rescinding on the ground of fraud after the discovery of the fraud.

5. *Trial; Jury Question; Evidence.*—Where the facts are such that men of ordinary intelligence may reasonably differ as to the inferences to be drawn therefrom, the question becomes one for the jury to determine.

APPEAL from Marion Circuit Court.

Heard before Hon. C. P. ALMON.

Action by Walter McCrory against the St. Louis & San Francisco Railroad Company, for damages for injuries received while engaged in the duties of his employment.   Judgment for plaintiff and defendant appeals.   Affirmed.

BANKHEAD & BANKHEAD, for appellant.   One cannot avoid the effects of a release by showing an unfulfilled

promise to give him employment. This might be ground for an action for breach of contract, but not for avoiding release for fraud.—6 Thomp. on Neg. Sec. 7375. Before rescinding, restoration must be made, and under the facts in this case, no excuse is shown for not tendering the amount paid, nor for a failure to pay it into court sooner than was done.—*Rabbitte v. A. G. S.* 158 Ala. 431; *B. R. L. & P. Co. v. Hinton,* 158 Ala. 470; *Kelly v. L. & N.* 154 Ala. 573; *Harrison v. A. M. Ry. Co.* 144 Ala. 246. Counsel discuss other assignments of error, but without further citation of authority.

A. F. Fite, and E. B. Fite, for appellee. The false promise was such a fraud as to authorize a rescission. —*Manning v. Pippin,* 95 Ala. 537; *Cunyus v. Guenther,* 96 Ala. 567; *Smith v. Smith,* 45 South. 172. Counsel discuss the other assignments of error, but without further citation of authority.

De GRAFFENRIED, J.—The appellee was, on the 3d day of December, 1908, an employe of appellant, and while acting in the line of his employment was painfully injured. There was evidence in the case tending to show that the appellant was legally liable to appellee for the damages suffered by him on account of such injuries.

On the 13th day of January, 1909, appellant paid to appellee $50, and obtained from him a release in full discharge of all liabilities of all sorts on account of such injuries. L. M. Smith, who was a claim agent of appellant, represented it in the negotiations which resulted in the payment to appellee of the $50 and the execution by him of the release. There was also evidence tending to show that appellee had not recovered from his injuries when the release was signed, and that

appellee would not sign the release until Smith had agreed, on behalf of the appellant, that appellee should have the same right to work for appellant that he had always had. Appellee, at the time of his injury, was an ordinary laborer in a bridge gang of appellant, and had been in its employ in that capacity for seven years. On the subject of what occurred at the time of the delivery of the release, the appellee testified as follows: "I told him at first that I would not sign anything, under no circumstances, and finally he said that he would give me $50 and the same privilege of working that I always had. He promised that he would not interfere with my getting work, and that he would write the superintendent that I had settled satisfactory to the company. After he had filled out the release and check, I said, 'If you are going to knock me out of work, I will not sign it,' and he told me that I would have the same privilege of working I always had."

The evidence further tended to show that J. C. Pentecost, general superintendent of bridges of appellant, in the early part of February, 1909, sent out notices to the bridge foremen of appellant not to employ appellee, and that the claim agent, Smith, after obtaining the release, told Pentecost on the train one day that, in his opinion, appellee would give trouble, if retained in the service of the company. There was some evidence in the case tending to show that appellee was not sufficiently able physically to undertake his accustomed work for appellant until the fall of 1909; that after his injury he worked on a farm, and either raised a crop, or aided in raising one, and also worked for a while in a hotel; that in the fall of 1909 he applied to a bridge foreman of appellant for work, and was informed that the superintendent of bridges had sent out notices prohibiting his employment; that he then wrote

the claim agent, Smith, and that Smith denied, in reply to his letter, that he had agreed that appellee could go back into the service of appellant, and declined to make any request for his re-employment. The evidence further tended to show that appellee then employed an attorney to bring suit against appellant for the damages suffered by him on account of said injuries, and that such attorney wrote two letters, one addressed to the claim agent, Smith, and the other to the "General Claim Agent" of appellant, addressed to its home office in St. Louis, Mo., giving notice that appellee annulled the contract by which he had released appellant from liability, and offering to return the $50 to appellant, and that no reply was ever received from either letter. After appellee had employed an attorney, and had notified appellant that appellee had rescinded the contract, Smith wrote a letter to the superintendent of bridges, stating that he had no objection to the employment of appellee, but not *before* that time.

If appellee's testimony is true, one of the prime considerations for the execution by him of the release was the agreement on the part of appellant that his position with it, so far as employment was concerned, would be on the same footing as it had been previous to his injury. As Smith was authorized by appellant to conduct the negotiations which culminated in the delivery of the release, Smith was, during the negotiations, the company itself. There was evidence, taking into consideration the conduct of appellant immediately after the delivery of the release in blacklisting appellee with its various bridge foremen, tending to show that appellant overreached appellee during the negotiations, and that it did not intend, when it made the promise to furnish appellee with employment, to carry out that agreement, but that it was made to deceive appellee

into signing and delivering the release. While it is true that a mere unfulfilled promise will not furnish a legal ground for avoiding a contract made upon the faith of such unfulfilled promise, nevertheless, when a party leads another into a contract by making him a promise which he has no intention at the time of performing, such a promise constitutes a fraud, and for such fraud the contract so entered into may be rescinded. *Nelson v. Shelby Mfg. Co.*, 96 Ala. 532, 11 South. 695, 38 Am. St. Rep. 116.

He who rescinds a contract for fraud must make speedy restitution to the party by whom he was defrauded of anything received by him under the contract, as it is the duty of the party seeking a rescission to put his adversary in the same position, as far as possible, that he occupied when the contract was made. He cannot hold to the fruits of a contract with one hand and repudiate the contract with the other. *Rabitte v. A. G. S. R. R. Co.,* 158 Ala. 431, 57 South. 573.

In this case appellee received $50 from appellant as a part of the consideration of the release, and the law required him to promptly return that money to appellant upon a discovery of the fraud, if he desired to avoid the contract unless he knew that appellant would not receive it. The law does not require vain things at the hands of any person, and a tender is never necessary where the party upon whom the law casts the duty of making the tender knows that the tender will be rejected if made. *Rabitte v. A. G. S. R. R. Co.,* *supra.* In our opinion, there was sufficient evidence in the record to authorize the jury to find by their verdict that a tender by appellee of the money would have been a useless formality, and that he was therefore not required by the law, on that account, to offer to return the money before bringing this suit.

When the facts are such that men of ordinary intel-
ligence may reasonably differ with each other as to the
conclusions to be drawn from them, such facts, as a
general proposition, present matters for the determina-
tion of the jury, and not a mere question of law for
the court. *Railway v. Ives,* 144 U. S. 408, 12 Sup. Ct.
679, 36 L. Ed. 485; *Sou. Ry. Co. v. Burgess,* 143 Ala.
364, 42 South. 36 *Birmingham R., L. & P. Co. v. Mur-
phy, Infra,* 56 South. 817.

The law requires the party who desires to rescind a
contract for fraud to act speedily in the matter of the
rescission upon the discovery of the fraud. The right to
rescind a contract for fraud, says our Supreme Court,
may be lost by failure to manifest the election to dis-
affirm it within a reasonable time. Great punctuality
and promptness of action by the deceived party is re-
quired by the law, in order that he may rescind the
contract upon the discovery of the fraud. *Lockwood
v. Fitts,* 90 Ala. 150, 7 South. 467.

It is true that appellee in one part of his testimony
states that two or three months after the execution
of the release he heard that the superintendent of
bridges of the appellant had blacklisted him with the
various bridge foremen of appellant. He states, how-
ever, that he supposed that the orders of the superin-
tendent of bridges, blacklisting him, had been issued
*before* the execution of the release, and that, for that
reason, he had paid no attention to the rumor and
waited until the fall of the year, when, having become
able to again work as a laborer in a bridge gang, he
applied to appellant for work, and was denied employ-
ment. While it may be true that the statement of ap-
pellee that he paid no attention to the *rumor* that
orders had been issued to the bridge foremen not to
employ him, because he supposed that the orders had

been issued *prior* to the execution of the release, may have been incompetent, that testimony was not objected to, and we are of the opinion that, even if it had been objected to and excluded by the court from the jury, nevertheless there was sufficient evidence in the case for the jury to have concluded that the rumor was not such notice, under all the circumstances of the case, as required action on the part of appellee. The evidence *does* show that after appellee applied for and was denied employment he took the immediate and necessary steps to inform appellant of his rescission of the contract.

At the request of counsel for appellant in their able and exhaustive brief, we have considered only the salient features presented by this record, and we forego any discussion of some of the mere technical points presented by it, which do not affect the merits of the controversy.

The judgment of the court below is affirmed.

Affirmed.