(86 South. 103)

UNITED STATES CAST IRON & FOUNDRY CO. v. MARLER. (6 Div. 517.)

(Court of Appeals of Alabama. Jan. 13, 1920. Rehearing Denied Feb. 10, 1920.)

1. RELEASE ⊜⇒24(2)—INJURED EMPLOYÉ MAY REPUDIATE RELEASE OBTAINED THROUGH FRAUD BY RETURNING CONSIDERATION.

Where injured employé has been induced by fraud to sign a release in consideration of money paid to him, he may within a reasonable time after the discovery of the fraud repudiate the release by returning the consideration received.

2. RELEASE ⊜⇒24(2)—INJURED EMPLOYÉ REPUDIATING RELEASE. OBTAINED BY FRAUD. MUST REPUDIATE IN TOTO.

An injured employé, who has been induced by fraud to sign a release, receiving consideration therefor, must repudiate it, if he does so at all, in toto, and not by piecemeal, by retaining the benefits.

3. RELEASE ⊜⇒24(2) — CONSIDERATION MUST BE RETURNED ON REPUDIATION.

Where money is paid as an inducement for signing a release, there can be no repudiation of the release without first tendering back the money so paid.

4. RELEASE ⊜⇒24(2)—INJURED EMPLOYÉ CANNOT REPUDIATE RELEASE WITHOUT RETURNING CONSIDERATION.

Where an injured employé signed a release because of fraudulent representation that it was a mere receipt for insurance money due. him, and received a sum of money as an inducement for signing such release, he could not thereafter repudiate the release on the ground of fraud, without offering to return the money so paid.

Samford, J., dissenting.

Appeal from Circuit Court, Jefferson County; John O. Pugh, Judge.

Action by L. A. Marler against the United States Cast Iron & Foundry Company for damages for personal injuries. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Certiorari denied 204 Ala. 342, 86 South. 108.

Coleman & Coleman and Spain & Fisk, of Birmingham, for appellant.

The defendant was entitled to the affirmative charge, as no negligence on the part of any person in control of an engine or car upon the railway was shown. 172 Ala. 505: subdivision 5, § 3910, Code 1907.

A person who would disaffirm a fraudulent release must return whatever he has received under it; without this no recovery can be had. B. R. L. & P. Co. v. Jordon, 170 Ala. 536, 54 South. 280; Rabitte v. Ala., etc., Ry. Co., 158 Ala. 431, 47 South. 573; T. C. I. R. R. Co. v. Moody, 192 Ala. 366, 68 South. 274, L. R. A. 1915E, 369; Capital Security Co. v. Holland, 6 Ala. App. 205, 60 South. 495; St. L. & S. F. Ry. Co. v. McCrory, 2 Ala. App. 536, 56 South. 822; Western Ry. Co. v. Arnett, 137 Ala. 414, 34 South. 997; Harrison v. Ala. Midland Ry. Co., 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804; Royal v. Goss, 154 Ala. 117, 45 South. 231; Stephenson v. Allison, 123 Ala. 439, 26 South. 290; Kelley v. L. & N. R. R. Co., 154 Ala. 573, 45 South. 906.

A person returning the consideration of a fraudulent release must act speedily and within a reasonable time after discovery of the fraud, and unless he does so act no recovery should be allowed. Beatty v. Palmer, 196 Ala. 72, 71 South. 422; McCoy v. Prince, 11 Ala. App. 398, 66 South. 950; Capital Security Co. v. Holland, 6 Ala. App. 205, 60 South. 495; Graybill v. Drennen, 150 Ala. 231, 43 South. 568; Continental Jewelry Co. v. Pugh, 168 Ala. 299, 53 South. 324, Ann. Cas. 1912A, 657; St. L. & S. F. Ry. Co. v. McCrory, 2 Ala. App. 536, 56 South. 822.

Harsh, Harsh & Harsh, of Birmingham, for appellee.

The evidence was sufficient to take to the jury the negligence of Brown. 185 Ala. 482, 64 South. 111; 161 Ala. 111, 49 South. 423; 111 Ala. 265, 18 South. 522; 97 Ala. 240, 12 South. 88; 93 Ala. 181, 9 South. 577; 92 Ala. 218, 9 South. 276. A receipt is not a contract, but a mere evidence of a fact, while a release extinguished a pre-existing

right. 49 La. Ann. 1393, 22 South. 762; 9 Lea, 104; 54 Tex. Civ. App. 26, 116 S. W. 72; 33 Cyc. 1072.

Where one accepts money upon it being fraudulently represented to him that it is a gift, or insurance, or wages, or something to which he is entitled, and which is in no way connected with any right of action which he might have for injuries due to negligence, and is induced to sign a paper which, through fraud, he is induced to believe is merely a receipt for such money, and in no way a release of any right of action which he might have, upon discovery of such fraud, by which he was induced to sign a release, it is not necessary that he tender such money back before he is entitled to maintain an action for personal injuries. Western R. R. of Ala. v. Arnett, 137 Ala. 414, 34 South. 997; B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; Mullen v. Old Colony R. R., 127 Mass. 86, 34 Am. Rep. 349; Jaques v. So. City Tr. Co., 124 Iowa, 257, 99 N. W. 1069; O'Neil v. Lake Superior Iron Co., 63 Mich. 690, 30 N. W. 688; Jeez v. McDonald, 179 Iowa, 193, 161 N. W. 62; Porth v. Cadillac Motor Car Co., 198 Mich. 501, 165 N. W. 698; C., R. I. & P. R. R. v. Lewis, 13 Ill. App. 166; Shaw v. Webber, 79 Hun, 307, 29 N. Y. Supp. 437; Clery v. Municipal Electric Co., 65 Hun, 621, 19 N. Y. Supp. 951; Meyer v. Haas, 126 Cal. 560, 58 Pac. 1042; Bramble v. Cin., F. S. & E. R. R. Co., 132 Ky. 547, 116 S. W. 742; 34 Cyc. 1073.

"When the execution of a written instrument is procured by misrepresentation of its contents, and the party is induced by such fraud to sign it, when he did not know he was signing such an instrument and which he did not intend to sign, the party so defrauded may avoid his signature because of the fraud practiced upon him, notwithstanding he may have neglected to read the instrument, or have it read to him." Western R. R. of Ala. v. Arnett, 137 Ala 414, 34 South. 997; B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; Beck v. Houppert, 104 Ala. 503, 16 South. 522, 53 Am. St. Rep. 77; Bank of Guntersville v. Webb & Butler Co., 108 Ala. 132; Tillis & O'Neil v. Austin, 117 Ala. 262, 22 South. 975; Burroughs v. Pacific Guano Co., 81 Ala. 255, 1 South. 212.

BRICKEN, P. J. This was a suit for damages, brought by an employé against his employer under subdivision 5 of section 3910 of the Code 1907. Plaintiff was injured, it was alleged, as the result of the negligence of one W. S. Brown, who on behalf of defendant was in charge and control of an engine and car upon a railroad track. The pleadings were in short by consent. The defenses interposed were contributory negligence, release, accord, and satisfaction.

It appears from the testimony that plaintiff was a mechanic's helper, and was assisting one Kiker, whose duty it was to repair breakdowns wherever they occurred in the plant of the defendant. A breakdown occurred in that part of the plant known as the "mud mill," and in repairing this breakdown it became necessary for Kiker and plaintiff to insert a new core bar. To get this core bar to the place where it was needed, plaintiff and Kiker had taken the core bar to the track of a narrow-gauge railway which the defendant operated on its premises for the purpose of moving heavy materials. Plaintiff was standing near the track, and the engine was backing a flat car to the place where plaintiff was standing. It was the purpose of plaintiff and Kiker to load the core bar on the flat car. As the car approached plaintiff, it struck a core bar head, which was lying on the ground, and jammed the same against plaintiff's leg, causing the injury complained of. The engine was operated by one Walker, who was the engineer.

There was evidence tending to show that Brown was in charge or in control of the engine and car, and that as a proximate consequence of his negligence the plaintiff was injured. There was also evidence tending to show the plaintiff's earning capacity had been impaired and decreased on account of the injury suffered by him.

The assignments of error based upon the written charges requested by defendant, relating respectively to the negligence of Brown, and to his control of the engine and car, and to the decreased earning capacity of plaintiff, are without merit. L. & N. R. Co. v. Richardson, 100 Ala. 232, 14 South. 209; L. & N. R. Co. v. Goss, 137 Ala. 319, 34 South. 1007; L. & N. R. Co. v. Fitzgerald, 161 Ala. 397, 49 South. 860; Alabama Fuel & Iron Co. v. Ward, 194 Ala. 242, 69 South. 621.

This brings us to the main defense relied upon by appellant. The plaintiff Marler, in consideration of $50, signed the paper, a copy of which is set out in the record, releasing the defendant from all liability for damages sustained by plaintiff on account of this accident. It is conceded that the plaintiff executed this instrument and received from the defendant the consideration recited therein, and that at the time of the trial this consideration had not been returned to the defendant. The plaintiff sought to avoid the effect of this release and of his failure to return the consideration received therefor by introducing testimony tending to show that this release was secured by fraud.

The issue upon this question was sharply contested. Plaintiff's testimony that he signed this release, while in a helpless condition from physical pain and mental suffering, un-

der the belief, induced by the false and fraudulent representation of defendant's agents, that he was signing, not a release of his cause of action, but a receipt for money he was entitled to under a contract of insurance, was met by testimony of defendant that plaintiff was able to read and write, that the contents of the release were carefully explained to him, and that he signed the same voluntarily.

[1] Assuming that plaintiff's testimony relating to this issue was all true, and that defendant's testimony was all false, we reach the conclusion that plaintiff, with capacity to read, signed this release, and received therefor $50 as the result of fraudulent and untruthful representations, by reason of which he was led to believe and did believe that he was attaching his signature, not to a release, but to a receipt for money rightfully his. This undoubtedly gave plaintiff the right, within a reasonable time after discovery of the fraud, to repudiate this release by returning the consideration received therefor and to place his cause of action in the same position it was before the release was ever signed.

[2] The plaintiff had the right to repudiate the release, if it was obtained through fraud; but he could not repudiate it by piecemeal. He could not retain unto himself the benefits of the settlement and at the same time deny to the defendant by repudiation those benefits which inured to the defendant therefrom. He could repudiate only in toto, and therefore necessarily only by putting himself and the defendant back in statu quo. He could not restore the former status without a return of the money which had been paid as inducement for signing the release.

[3] The decisions of foreign jurisdictions are in hopeless conflict on the necessity of returning or tendering the consideration upon repudiation of a release of damages for personal injuries procured by fraud. See note, Ann. Cas. 1912D, 1084. Therefore an attempt to differentiate the present case from the cases considered by foreign courts of last resort would be useless. The Supreme Court of Alabama is firmly committed to the principle that, where money is paid as an inducement for signing a release, there can be no repudiation of the release without first tendering back the money as paid. Birmingham Railway, Light & Power Co. v. Jordan, 170 Ala. 530, 54 South. 280; Harrison v. Alabama Midland R. Co., 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804; Kelly v. L. & N. R. Co., 154 Ala. 578, 45 South. 906; Birmingham R. Co. v. Hinton, 158 Ala. 470, 48 South. 546; Stephenson v. Allison, 123 Ala. 439, 26 South. 290; Dill v. Camp, 22 Ala. 249; Barnett v. Stanton, 2 Ala. 181. The case of Western Ry. of Ala. v. Arnett, 137 Ala. 414, 34 South. 997, and the later case of B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280, as well as the case of Illinois Central R. R. Co. v. Johnston (decided by the Supreme Court of Alabama on the 30th day of June, 1920) 87 South. 866, all recognize the rule just stated.

In the Arnett Case the plaintiff had been paid not as inducement for signing the paper which he signed. The payment of the money and the signing of the release had nothing whatever to do with each other. The defendant had not said, "If you will sign this paper, we will pay you $25." On the contrary, it appeared that the defendant's representative, after expressing extreme solicitation of the defendant's president on the plaintiff's behalf, and after promising the plaintiff lifelong employment by the defendant, said defendant's president further desired to make him a gift of $25. Thereupon the money was paid. Later (the principle would have been no different if days or weeks had intervened) the defendant's representative asked the plaintiff to sign a certain writing, and assured him that it had nothing whatever to do with the payment of the money; "that it did not amount to anything; that it was simply a paper stating that plaintiff had no ill will or hard feelings against defendant company." From the fact, as aforestated, it clearly appears that the payment of the money had not been an inducement for the signing of the paper, and was no part of the same transaction. On the other hand, in the Jordan Case the money had been paid as the inducement for signing the release, and the Supreme Court held that, inasmuch as the payment of the money and the signing of the release were inseparable parts of the same transaction, there could not be a rescission in toto without a return of the money.

The instant case cannot be differentiated from the Jordan Case. In that case plaintiff had lost in currency $18.25 on one of the defendant's cars. The loss occurred concurrently with certain injuries, for which she brought suit. This $18.25 was absolutely her money, and, though she was injured, should have been returned to her. In that respect there could be no difference, because the claim of the plaintiff in the instant case was for insurance money due him. Miss Jordan's contention was that she was being paid money that belonged to her. She signed a paper, which was later shown to be a full release of the defendant from all liability for her personal injuries. Upon this paper's being introduced as a defense, she sought to avoid it by saying that she did not have to return the money which had been paid her, because the company owed her that much money as restoration of what she had lost on defendant's car, and which belonged to her. Therefore the money that was received by

her was the same thing as her own money, and was not paid as compensation for her damages.

[4] The plaintiff in the instant case says the money which was paid him was represented to be insurance money that belonged to him; that he should not return the money as a condition to repudiating the release which he signed, because he was being paid what belonged to him, or what was due him, and the payment was not made in compensation of his damages. In the Jordan Case the Supreme Court of Alabama says, in effect, that while the $18.25 did belong to Miss Jordan, and while the representative upon which she signed the receipt for the money was false, and the receipt fraudulent, in that it was a complete discharge from liability, she could not repudiate the release without returning the money paid her for signing it. Under no process of reasoning can there be a different application of the principle to the instant case, for the plaintiff in this case is doing practically the same thing Miss Jordan did. He sets up the return of the money paid to him should not be made a condition to his repudiating the fraud by which he was induced to sign what turned out to be, not a receipt for the money that was due him, and paid, but a release from all liability.

The case of Illinois Central R. R. Co. v. Johnston, 87 South. 866, which has been very recently decided, recognizes the distinction aforesaid. The case here is clearly distinguishable from the Arnett Case, and is controlled by B. R., L. & P. Co. v. Jordan, supra. The logic of the situation in the instant case is as follows:

The money would not have been paid, unless the plaintiff signed the paper, which was a release. The plaintiff signed said paper in order to get the money. The plaintiff was induced to sign said paper by false representations as to its contents. The plaintiff having been induced by fraud to sign the paper in order that he could get the money, which would not have been paid him under any other condition, the fraudulent representation was inherent in the one transaction. It is because of this fraud that plaintiff seeks by repudiation thereof to set aside the one transaction. The law is, as announced by the Supreme Court of Alabama, that as a condition to repudiating the transaction for fraud the plaintiff must return or offer to return what he received as the result of the fraud. What did plaintiff receive as the result of the fraud practiced on him? Money which he was told was paid him as insurance due, and for the payment of which he thought he was signing a receipt, but which was a full release of defendant from all damages to plaintiff for personal injuries. The very essence of the fraud, as contended by plaintiff, is that he was being paid money due

him as insurance, when as a matter of fact defendant was paying him the money as compensation for his injuries and obtaining from him a release therefor.

In addition to what has just been said, it is a potent fact that in this regard there is no evidence as to the exact amount that was due plaintiff for insurance, if anything was due, and there is no evidence as to whether the $50 that was paid plaintiff was more than the insurance or less than the insurance. In view of the facts of this case, we are constrained to the conclusion that the plaintiff's failure to return or offer to return the money which was paid to him at the time he executed the release rendered his disaffirmance and attempted repudiation of this release ineffective, and that his failure to pay back or offer to pay back said money should have defeated his recovery.

The judgment of the lower court is reversed, and the cause remanded.

Reversed and remanded.

SAMFORD, J. (dissenting). The plaintiff's action is to recover damages for personal injuries sustained while an employé of the defendant company, and the suit finally went to the jury on a count under subdivision 5, of section 3910 of the Code of 1907, and charged the injuries to the result of the negligence of one W. S. Brown, who on behalf of the defendant was in charge or control of the engine and car upon the railroad track of the defendant. The issues were made on the general issue in short by consent, with leave, etc., and replication in short by consent, etc. The general charge was requested by the defendant, and refused by the court, and this action of the court is the basis of the first assignment of error. There was ample evidence to sustain the plaintiff's allegations in the complaint and therefore the charge was properly refused.

There was also sufficient evidence of the duties of W. S. Brown, named in the complaint as defendant's agent, in charge of defendant's engine on its railroad track, to go to the jury, and therefore defendant was not entitled to the general charge on this account. There is evidence to the effect that Brown was there in defendant's yard as its yard foreman, directing and supervising the moving of the cars and engine, for the purpose of carrying on defendant's general business, and that the engine driver moved as directed by Brown, and there is an entire absence of any proof to the contrary. There is evidence tending to prove that Brown who was the defendant's yard foreman, was having the train of cars placed for the purpose of loading a piece of heavy machinery, lying near the track; that at that time the engineer was subject to and obeying his signals; that plaintiff was at his duties near the track, de-

pending on his superiors to so conduct the business of defendant as not to hurt him; that the heavy flask that was jammed against defendant, resulting in the injury complained of, was in full view of Brown and in close proximity to the track; that Brown knew that some of the cars in the train were wider than others; that the backing of the train was on a curve, and Brown was the only employé' of defendant having a view of the whole situation. With this knowledge he signaled the engine back, which resulted in one of the wider cars running against the heavy flask and causing it to fall on defendant, breaking his leg and otherwise injuring him. These facts clearly presented a question for the jury on the question of negligence.

The defense most strongly urged by appellant, and which is presented in various ways, by numerous written charges requested and by exceptions to the court's oral charge, is that, notwithstanding the defendant's original liability, after the injury had occurred, the plaintiff, for a valuable consideration, signed a written release, discharging the defendant from all liability by reason of the injury complained of. This question was raised under the general issue in short by consent, with leave to give in evidence any matter of defense as if the same had been fully pleaded, and by a replication of the same nature. This presents the question on the facts and on the charge of the court, which according to the plaintiff's contention are:

The plaintiff was severely injured by having his leg broken and being otherwise bruised and hurt, as a result of the negligent act of one of defendant's agents; that he was carried to the hospital by direction of defendant, and put under the care of a physician and a nurse; that when he entered defendant's employ, and at the time of his first pay day, defendant deducted from his wages $1.50, which he was told was for insurance and medical attention; that plaintiff acquiesced in this, without definitely ascertaining what the insurance covered; that this premium had been paid before he was hurt; that plaintiff was in the hospital, "flat on his back from the injury," under the constant care of a surgeon and a nurse, suffering the pain incident to a broken leg and the effect upon his nervous system, except in so far as the suffering was alleviated by opiates administered by the attending physician; that the injury was of such a serious nature that as a result plaintiff was confined to the hospital and under the constant care of a physician and trained nurses for several months, and at times suffered great pain and at times was unconscious; that while he was in the hospital the first time, about three weeks after his injury, a man came to his bedside, representing himself as an insurance agent for the

pipe works plaintiff worked for, and he wanted to pay plaintiff his insurance, which was half time; and that Dr. Winn, the attending physician, had said plaintiff would be out in five weeks, which would make the insurance $50. He offered plaintiff the $50 in money, in payment of the insurance, and plaintiff accepted it, with the understanding that he still had coming half time from the company during his disability. The insurance man then, without saying anything about a discharge of liability, or saying anything that would lead plaintiff to believe that he was other than as he had represented himself to be, handed the $50 to plaintiff, and at the same time handed plaintiff a paper to sign, which plaintiff testified, without objection, he thought was a receipt for the money, and which paper plaintiff signed without reading. This paper afterwards proved to be a paper purporting to release defendant from all liability by reason of the injury to plaintiff. It was shown that plaintiff could read and write a little, but not much, having worked on a farm all his life.

It appears from the testimony of defendant's cashier that plaintiff had paid to defendant an insurance premium covering an indemnity for one-half time during disability, and therefore at the time of the injury plaintiff was entitled to indemnity in some amount from somewhere, and he had a right to rely upon the statement of the agent that he was being paid the $50 on the insurance, and still was insured to the extent of half pay during the time of his disability, and if the agent made the representations to plaintiff, as testified to, that he was the insurance agent, that he was there for the purpose of settling the insurance, that the money paid was paid as insurance money, that plaintiff received it as such, that in the entire conversation there was nothing to lead plaintiff to believe that the transaction related to any other matter, that the paying of the money in currency and the signing of the paper were simultaneous, and relying on these representations and the general understanding brought about by the agent, at a time when plaintiff was still in bed, suffering as a result of defendant's negligence, plaintiff signed the paper introduced in evidence, it was a fraud and void; the facts and circumstances when taken together being equivalent to a false representation as to the contents of the paper signed. Beck & Pauli L. Co. v. Houppert & Worcester, 104 Ala. 503, 16 South. 522, 53 Am. St. Rep. 77; Burroughs v. Pacific Guano Co., 81 Ala. 255, 1 South. 212; Johnson v. Cook, 73 Ala. 537. In the Beck & Pauli L. Co. Case, supra, there was no direct misrepresentation of the instrument actually signed and held to have been obtained by fraud, and in the Johnson v. Cook Case, supra, Mr. Justice Stone said:

"If the signature of the deed was obtained by misrepresentation of its contents, or by any other fraudulent means, by which Cook was induced to sign the instrument, of the contents of which he was ignorant, * * * this constitutes fraud," etc.

Indeed, appellant's counsel seems to concede that the facts on this phase of the case were sufficient to go to the jury, for them to say whether the signature to the release was obtained by fraud. But the defendant says plaintiff cannot set this up in the case to avoid the effect of the release, because he has not paid back, or offered to pay back, the $50 paid to him by the agent at the time the paper was signed. The rule is perfectly well settled in this state that, where a person would disaffirm a contract for fraud, he must return whatever he received under it, and this must be done promptly. B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280; St. L. & S. F. R. Co. v. McCrory, 2 Ala. App. 531, 56 South. 822.

But in the instant case, if the contention of the plaintiff is true, the money received by him at the time of signing of the receipt was his by right of his contract of insurance, entirely separate and apart from any claim which he held against the defendant by reason of its negligent breach of duty. It was shown that plaintiff paid a premium, which entitled him, in case of injury, to medical attention and one-half time pay; and it was shown by the testimony of plaintiff that this obligation to him had never been discharged, unless it was so discharged and canceled by the payment of the $50 to him. If this is true, the payment of the $50 was not the consideration for the signing of the papers; but it presents an entirely separate transaction, not available to defendant in this suit, and there was no duty resting upon the plaintiff to return the money or to offer to return it. In a suit by plaintiff to enforce the balance due for half time during his disability, a different question would be presented. In Western Ry. of Ala. v. Arnett, 137 Ala. 414–426, 34 South. 997, 1001, this distinction is recognized by the learned justice writing the opinion, where he says:

"Moreover, the replication set up that the $25 was a gift by defendant to plaintiff."

And this same distinction is recognized and reaffirmed in the case of B. Ry., L. & P. Co. v. Jordan, 170 Ala. 538, 54 South. 280, in the opinion rendered by the present Chief Justice. In all of the cases cited and relied on by appellant the money paid was the consideration for the signing of the contract and related to the obligation claimed to have been discharged, and none of them are in conflict with the present holding or the authorities herein cited. The rule is well

stated in the case of Mullen v. Old Colony R. Co., 127 Mass. 86, 34 Am. Rep. 349; also in O'Neil v. Lake Superior Iron Co., 63 Mich. 690, 30 N. W. 688; Meyer v. Haas, 126 Cal. 560, 58 Pac. 1042; Cleary v. Municipal E. Light Co., 19 N. Y. Supp. 951;[1] Bramble v. C., F. & S. E. R. R., 132 Ky. 547, 116 S. W. 742; Tallassee Fall Mfg. Co. v. Taunton, 16 Ala. App. 578, 80 South. 152. If as a matter of fact the $50 was paid to plaintiff as insurance due him, and the insurance was due him, as is shown under one phase of the evidence, the plaintiff only got what he was entitled to, and the paper claimed to be a release was without any consideration, and for that reason would be void.

There is nothing in appellant's assignments of error based on the trial court's refusal to charge that plaintiff was only entitled to recover nominal damages. Plaintiff's evidence showed a decrease in earning capacity by reason of the injury, and there was ample evidence to authorize the jury to find the amount of damages shown by the verdict.

That part of the oral charge of the court with reference to contributory negligence, to which exception was reserved, is not quite clear, and, taken alone, might be said to be misleading; but, when taken in connection with the whole charge and the written charges, I am of the opinion that the whole case was fully and fairly presented to the jury. From this record I cannot hold that the court abused its discretion in permitting Mrs. Marler, the wife of plaintiff, to testify, after she had heard a part of the evidence.

I have not dealt with the errors assigned in detail, but the general principles herein announced will suffice to express my views of the law of this case.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 65 Hun, 621.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes