Clifford E. HOHN, d/b/a Hohn Mechanical Contractors, and Underwriters at Lloyd's London, Plaintiffs,

v.

ALASKA INDUSTRIAL BOARD, consisting of Henry A. Benson, Chairman, J. Gerald Williams, Member, and Ross P. Duncan, Member and Nobel Jess Swepston, Defendants.

No. A–7418.

District Court, Alaska,
First Division, Juneau.

April 5, 1957.

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiffs.

Harold J. Butcher, Anchorage, Alaska, for defendant Nobel Jess Swepston.

KELLY, District Judge.

The facts reveal that defendant Swepston, hereinafter called employee, was employed by plaintiff Hohn, hereinafter called employer, as a steamfitter commencing November 4, 1952; that on December 8, 1952, the employee suffered an accidental injury arising out of and in the course of his employment, resulting in a fracture of the heel bone of his left foot; he was paid temporary disability compensation based on the rate of pay he was receiving in Anchorage, Alaska, for the period from the date of injury through April 2, 1953, in the total sum of $1,670.86; in addition, medical expenses were paid totaling $1,037.72; that the employee returned to work on March 20, 1953, at a salary equal to the salary he had received from the employer at the time of the injury; the employment, however, was not as a steamfitter but was a desk job in the performance of which he sat at a desk and performed clerical work which required knowledge of pipe fittings and plumbing supplies. He continued to work until his job terminated on July 23, 1953. Employee had previously been a resident of Kansas prior to coming to Alaska. After the termination of his job as aforesaid he returned to Kansas, where he remained at least until after March 15, 1954.

A report from a Dr. George Hale of Anchorage dated March 20, 1953, had been submitted to the insurance carrier for the employer stating that the employee would be able to return to his regular work on March 20, 1953. This report had been prepared by the doctor's secretary, who signed his name thereto. It was brought out later that Dr. Hale did not feel that the employee would be able to return to his normal work at that time and would not have signed the report. He made a further report on July 23, 1953, in which he stated:

"Examination at this time is completely negative except for the slight limitation of motion in the subtalar joint. X-rays reveal very complete healing in such perfect position that I would be unable to tell he had ever had a fracture.

"The patient is not interested in a triple arthrodesis at this time and

wants to avoid it as long as possible so I am writing you this letter to give you a picture of his status, and to see whether or not you feel that continued compensation is in order."

After his return to Kansas the employee was treated by a Dr. Jarrott, who submitted reports on September 3 and October 24, 1953, in which he indicated among other things that the maximum improvement had not yet been achieved. These were followed by a report dated December 14, 1953, in which Dr. Jarrott stated that the employee was fit to resume his usual work as of December 7, 1953, although the injury had caused a 25% permanent partial disability.

The records show that on March 15, 1954, the employee entered into a compromise and release with the employer whereby he was paid an additional $675, being compensation for a 25% permanent partial disability of use of the foot. The employee was represented by counsel at the time this compromise and release was entered into and this was approved by the Alaska Industrial Board, and payment was made in accordance therewith.

The employee on March 30, 1955, filed an application for adjustment of claim with the Industrial Board, claiming additional temporary compensation from July 23, 1953, to December 5, 1953, the employee contending that the compromise and release above referred to was entered into in reliance on the unauthorized report from Dr. Hale's office. The compromise settlement was then set aside by the majority of the Board although no tender of the amount paid thereunder had been made to the employer or its insurer. An award of $2,242.-64 was entered, representing 65% of the employee's prevailing rate of pay in Alaska for the period of July 23, 1953, to and including December 6, 1953. This amount was to be in addition to the previous compensation.

This court is limited by Sec. 43–3–22, A.C.L.A.1949 to reviewing questions of law in this proceeding and this opinion will be confined thereto. The Board's findings of fact may not be disturbed unless they are wholly unsupported by the evidence, in which case they constitute error as a matter of law.

Dealing first with the questions of law which have been raised, the appellant contends that the Board was powerless to set aside the compromise, and that if the employee was entitled to that relief, it would have to be obtained by an independent action in a court of equity. There is a division of authority among the state decisions on this point, but it will be unnecessary to examine the several views inasmuch as the problem can be resolved by referring to the provisions of the Alaska Act. Sec. 43–3–6, A.C.L.A.1949, pertaining to the right of the parties to enter into a compromise, provides:

"* * * If approved by the Board, such agreement shall be enforceable the same as any order or award of the Board, and subject only to modification in accordance with the provision of Sec. 4 hereof."

Sec. 4 in turn provides that:

"If an injured employee (is) entitled to compensation under any subdivision or part of this schedule, and it shall afterwards develop that he or she is or was entitled to a higher rate of compensation under same or some other part of subdivision of this schedule, then and in that event he or she shall receive such higher rate, after first deducting the amount that has already been paid him or her. To that end the Industrial Board is hereby given and granted continuing jurisdiction of every claim, and said Board may, at any time and upon its own motion or on application, *review any agreement,* award, decision or order, and, on such review, may make an order or award ending, diminishing or increasing the compensation previously awarded, ordered, or *agreed to,* subject to the maximum or minimum provided in this Act. No such review shall affect such award, or-

der or settlement as regards any moneys already paid, except that an award or order increasing the compensation rate may be made effective from date of injury, and except that if any part of the compensation due or to become due is unpaid an award or order decreasing the compensation rate may be made effective from the date of injury, and any payments made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such methods as may be determined by the Industrial Board; provided, however, that no compensation under such increased rate shall be paid unless the disability entitling the employee thereto shall develop and claim be presented within three (3) years after the injury." (emphasis supplied).

The necessary conclusion is that the Board may set aside a compromise found to be based upon fraud or mistake. This grant of authority in no way detracts from the jurisdiction of the District Court, but within the confines of the Workmen's Compensation Act, A.C.L.A. 1949, § 43–3–1 et seq., the Court and Board are vested with concurrent jurisdiction on questions concerning the validity of a compromise.

■ The appellant also raises a question regarding the interpretation of the word "rate" in Sec. 43–3–4. It is argued that by using that particular word, the legislature limited the Board to increasing the proportion of the compensation, and did not authorize it to award additional compensation. For example, if a settlement were based upon a 50% disability, and the injury were later shown to involve a 75% disability, the settlement could be increased proportionately; or if it were based upon the assumption that the employee's average daily wages were $5 and it later could be established that the average daily wages during the period of disability would have been $10, the approved settlement could be modified accordingly. However, if this construction were applied, it would follow that in the case of an injured workman receiving benefits for temporary disability, after certification by the doctor that the employee had recovered, and the issuance of an order terminating the compensation, the Board would be powerless to award additional compensation if the doctor's analysis proved to be wrong and the employee suffered a recurrence of the condition immediately after the order. I feel such construction would not be in accord with the purpose of the Act.

As counsel for the employee has pointed out, citing 58 Am.Jur. 595:

"Although it has been held that the provisions of workmen's compensation acts are to be strictly construed, inasmuch as the provisions thereof are in derogation of the common law, the rule of liberal construction has been very generally applied upon the ground that such legislation is remedial in character."

The following statement was made in 15 N.A.C.C.A. Law Journal, 156, at p. 157, in a comment on Colbert v. Consolidated Laundry, 1954, 31 N.J.Super. 588, 107 A.2d 521:

"The spirit of the opinion is commendable. As it says, 'Why construe narrowly a statute which courts construe liberally? A less liberal rule applied to claims arising under our Workmen's Compensation Act would do violence to the beneficent purpose intended to be effectuated by the act. Liberality of construction of the Workmen's Compensation Act has been firmly established and runs consistently through our cases on the subject.' In spite of this universally admitted and continually repeated proposition, narrow constructions are continually urged and taken through to the highest courts. The infinite variety of conditions of injury in employment in industry today do not admit of the meticulous precision of a common law conveyance."

■ A further consideration is whether a tender of the money paid in settlement was a prerequisite to re-opening the case. Generally a tender is necessary, the foundation for the rule being the injustice of allowing the claimant to seek additional compensation without risking the loss of that which he already has. However, in a letter dated January 12, 1955, from Morrell P. Totten & Co., Inc., the employer's insurer, to Mr. Butcher, counsel for the employee, it was stated:

"We likewise advise our settlement was affected (sic) through Mr. Swepston's then counsel, and we are suggesting to our principals that they stand upon the settlement as made, and defend in any action which Swepston desires to commence at this time."

In view of this correspondence, any tender by the employee obviously would have been refused, and the law will not require the doing of a futile act. Smith v. Atchison, T. & S. F. Ry., Tex.Com. App.1921, 232 S.W. 290; St. Louis & S. F. R. Co. v. McCrory, 1911, 2 Ala. App. 531, 56 So. 822; Woods v. Wikstrom, 1913, 67 Or. 581, 135 P. 192.

■ Passing on to the Board's findings of fact, the appellant questions the validity of findings (1) and (4):

(1) "That the claimant Jess Noble Swepston, by reason of a medical report purportedly signed by Dr. Hale of Anchorage, Alaska, was denied compensation in accordance with Territorial law from July 23, 1953 to and including December 6, 1953."

(4) "That the daily rate of pay of the claimant Jess Noble Sweptston, at the time of the injury, was $25.37 and that the claimant is entitled to 65% of said daily pay, or the sum of $16.49, computed from the 23rd day of July, 1953, to and including the 6th day of December, 1953, in addition to all other compensation previously paid."

The Court concludes that the first finding of fact is supported by some credible evidence, and therefore it must be upheld. The appellant's contention that the findings of the Board were inadequate undoubtedly has reference to the absence of a specific finding of reliance by the employee on the erroneous medical report from Dr. Hale's office, but the first finding necessarily implies such reliance. Appellant presents a forceful argument that the employee would not have relied on the unauthorized report in view of all the circumstances, but I cannot find that the Board acted arbitrarily in ruling that he did so rely.

■ The employer further contends, with regard to the Board's fourth finding of fact, that if any additional compensation is allowable herein it should be based on the employee's loss of earnings in Kansas during the period. He argues that there is a strong presumption that although the employee could have performed some work he probably did not because of the compensation claim, inferring he would receive more in compensation based on Alaska earnings than he could earn in Kansas wages.

The provision for temporary disability found in 43–3–1 A.C.L.A.1949, in effect at the time of the injury, provides in part:

"The average daily wage earning capacity of an injured employee in case of temporary disability shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his daily wage earning capacity. If such earnings do not fairly and reasonably represent his daily wage earning capacity, the Industrial Board shall fix such daily wage earning capacity as shall be reasonable and have a due regard for the nature of his injury, the degree of temporary impairment, his usual employment and any other factor or circumstance in the case which may affect his capacity to earn wages in his temporary disabled condition."

It seems to me that the amount of the award should be based on the rate of wages claimant could have earned in the State of Kansas.

■ It is common knowledge that many employees come to Alaska, either being recruited by contractors to work on a certain job, or on their own volition to find employment at the high wages of the construction industry in Alaska, and upon the termination of their particular job or the completion of the project, return to their home states. This Court therefore feels that when those circumstances exist and the claimant, after his return, is found to be entitled to workmen's compensation based upon injury received, the rate should be based upon the amount of pay he would have received at the same type of employment in the state of his residence.

In the case of Vanney v. Alaska Packers Ass'n, 12 Alaska 284, on p. 290, Judge Dimond cited the provisions of Sec. 1 of the Act, 43–3–1 A.C.L.A.1949, covering temporary disability, supra, and stated as follows:

"Under the law as written it appears to be the duty of the Board, in every such case, to determine the amount of wages or compensation the injured employee is capable of earning and of which he is or may be precluded from earning and receiving by reason of his injuries, and base the award on that result."

and also:

"* * * but the ultimate test is, what has the employee lost in wages or compensation by reason of his injuries? That seems to be the standard which the law prescribes, * * *."

Another case which construes the Alaska Act and which was taken to the 9th Circuit Court of Appeals, is the case of Brown v. Alaska Industrial Board, 224 F.2d 680, 681. Judge Denman, Chief Judge, wrote the opinion and cited the above quoted part of Sec. 43–3–1, supra, emphasizing the last sentence thereof. In this case, Brown, a foreman in a surface mining operation in Alaska, suffered a knee injury September 15, 1952, and was paid the wages of such foreman until he ceased his employment in Alaska to go to the State of Washington, where his temporary injury ended on the following February 15th. Judge Denman pointed out that in this situation it was necessary that the Board make findings of fact on:

"* * * The wages Brown would have earned in the State of Washington for the period from the end of the employer's activity to February 15, 1953, when his temporary injury ceased."

and found the Board acted arbitrarily in failing to follow the mandate of the statute.

In the case of Giske v. Alaska Industrial Board, 224 F.2d 853, in another opinion of the 9th Circuit Court of Appeals written by Judge Denman, the court sustained the award of the Board, holding that where workmen's compensation claimant has failed to maintain the burden of proving his employment would have continued but for injury, substantial evidence sustains Industrial Board's award based on average daily earning capacity of $3.88 although claimant had been earning $17.63 daily while engaged in the occupation resulting in injury.

In the Giske case, supra, the total yearly earnings of the claimant, who was a net boss in a cannery, amounted to $2,540 from the cannery. His daily wage earning capacity was computed in the findings of the Chairman of the Board by dividing the sum of $2,540 by 360, and in pointing out the difference between this case and the case of Brown v. Alaska Industrial Board, supra, the court found that the Chairman did make his findings on those matters which the statute directs him to consider and that there was substantial evidence to support the Board's award.

While most employees desire early recovery and return to work, no employee should be encouraged, in the event of injury, to return to the states where both

wages and living costs are lower and where it would be as profitable to draw compensation as it would be to go to work. The incentive to early recovery could be lost.

I find, therefore, as a matter of law that the Board erred in basing the award on the Alaska rate of pay and that the award should have been based upon Kansas wages. This matter is therefore remanded to the Board to make findings of fact on the wages employee would have earned in the State of Kansas from July 23, 1953 to December 6, 1953, and to correct the award accordingly.