## MASON *v.* THORNTON.

Opinion delivered January 28, 1905.

1. PLEADING—CONSTRUCTION OF COMPLAINT—DECEIT.—A complaint which alleged that defendant expressly agreed and warranted that he was selling a stock of goods to plaintiffs at their original cost, but that, instead of doing so, he deceitfully and fraudulently changed the cost marks, with intent to defraud plaintiffs, and thereby imposed the goods upon plaintiffs for a sum in excess of such cost, states an action of tort for deceit. (Page 52.)

2. SALES—WARRANTY.—A stipulation in a contract for the sale of a stock of goods that the original cost of the goods should be the basis for determining the price of the goods is not a warranty that the marks on the goods truly note the prices paid for them. (Page 52.)

3. DECEIT—CHANGING COST MARKS.—Where, in a sale of a stock of goods, the original cost was agreed upon as the basis of ascertaining its price, the seller · is liable if he fraudulently altered the marks on the goods for the purpose of cheating the purchaser, or if the seller knew that the marks did not correctly show the cost of the goods, and falsely and fraudulently, with intent to deceive, represented to the purchaser that they did correctly show the cost, and if the purchaser, replying thereon, was deceived thereby, to his injury. (Page 53.)

4. SAME—INSTRUCTION.—Where the original cost of · a stock of goods was agreed upon in a sale as the basis of ascertaining the price, it was error, in an action charging that defendant fraudulently changed the cost marks in his invoice, to instruct the jury to find for plaintiffs if they found that the goods were invoiced at a higher price than the original cost, without regard to the question of fraud. (Page 53.)

5. SAME—NEGLIGENCE.—In an action for fraudulently changing the cost marks of a stock of goods, where the original cost was fixed as basis of ascertaining the price, it was not error to refuse to charge that plaintiffs could not recover if they, by the exercise of ordinary prudence, could have ascertained that the goods were marked too high. (Page 53.)

Appeal from Carroll·Circuit Court, Western District.

JOHN N. TILLMAN, Judge.

Reversed.

R. M. Thornton & Co., a partnership consisting of R. M. Thornton and W. T. Ewing, filed their complaint against the appellant, F. E. Mason, and afterwards filed their amended complaint, in which they charge that on the 10th day of August, 1900, they were partners doing business in the City of Eureka Springs, under the firm name of R. M. Thornton & Co. But that, at the time of the filing of the amended complaint, R. M. Thornton had acquired the interest of the said W. T. Ewing in said partnership, and all the rights growing out of the contract sued upon. That plaintiffs and defendant entered into a written contract, in which it was agreed that the defendant would sell to the plaintiffs a certain stock of general merchandise, at that time situated in the town of McCune, Kan.; said goods to be invoiced after said date of sale. That it was expressly agreed that the defendant would sell plaintiffs said goods · at their original cost, where purchased, whether Kansas City, Mo., or St. Louis, Mo., or Chicago, Ill. That the express agreement of defendant was a warranty that said goods were to be invoiced and sold to plaintiffs at wholesale prices; after which plaintiffs were to convey to defendant certain real estate in the City of Eureka Springs, to the value of $4,500, and were to pay the additional sum of $1,000 in cash, and the excess of the value .of said goods, at their wholesale prices aforesaid, was to be paid by the plaintiffs, at the rate of $100 per month until the balance had been fully paid. That the defendant did not invoice said goods to the plaintiffs at their wholesale cost in Kansas City and St. Louis and Chicago, as he had agreed to do, but falsely and fraudulently, for the purpose of swindling plaintiffs, changed the cost price of his goods from 25 to 33 1-3 per cent. above wholesale cost of the same. That, after the execution of the written contract of sale. an invoice of said goods was taken, and upon the completion of the invoice plaintiffs conveyed the real estate, as they had agreed to, and paid the $1,000 in cash, and executed notes for the sum of $1,812, the last-named sum being the balance of the purchase price, as per the invoice. That the defendant did not invoice the goods to them at the wholesale cost of them, but deceitfully and fraudulently changed the cost mark of said goods, so that, by the cost mark that he used

in making the invoice, said goods were imposed upon the plaintiffs for a sum in excess of their original cost; and that defendant represented that he had marked all of said goods at their original wholesale cost, but in fact he had marked same at an increase, as above stated; all of which was done for the purpose of cheating and swindling the plaintiffs. That, by means of the fraud aforesaid, the plaintiffs, relying on defendant's statement that his cost mark did represent their wholesale cost, were induced to accept said goods at from 25 to 33 1-3 per cent. above their cost price, to plaintiffs' damage in the sum of $2,000.

The contract was in the following language:

"This agreement made this 10th day of August, 1900, by and between F. E. Mason, of Crawford County, in the State of Kansas, of the first part, and R. M. Thornton, of Carroll County, in the State of Arkansas, of the second part, witnesseth, that said party of the first part, for the consideration hereinafter mentioned, covenants and agrees with the said party of the second part to sell to him, the second party, the entire stock of merchandise, consisting of dry goods, groceries, boots, shoes, notions, millinery, store fixtures and furniture now located in the building on the south half of lot 16, block 4, in the City of McCune, Kan., and to commence invoicing the same on the 2d day of September, 1900. The first $4,500 worth to be invoiced at cost, and the remainder to be invoiced at 17½ cents less than cost, as indicated by the cost mark on the goods invoiced, and to take in exchange for the said merchandise certain property in Eureka Springs, Ark., to the amount of $4,500; $1,000 in cash when goods are invoiced, and $100 each month until balance is paid, with interest at 6 per cent. per annum on deferred payments, which are to be secured by satisfactory personal security. Goods as above described in this contract by invoice at St. Louis, Chicago and Kansas City wholesale prices as marked on the goods, and on other goods to be added to the stock, except those mentioned by Mr. F. E. Mason to me when I was there. In consideration of which the said party of the second part covenants and agrees to pay unto the said party of the first part for the same the sum of $4,500 as follows: In a warranty deed to four lots and four store rooms and other buildings thereon, one livery barn and one blacksmith shop and

the four lots 40x50 each, on which the barn yard and black-smith shop are situated, also two lots and eleven feet off the east side of one lot on which there is.a spring, also the piping that conveys the water to the barn; and to furnish abstract of. title to the above property, and pay $1,000 in cash when the goods are invoiced, and $100 on the first day ·of each month until the balance is all paid, with interest at the rate of 6 per cent. per annum on the deferred payments, the above-described property to be that same as shown to F. E. Mason and H. M. Ford when they were in Eureka Springs, with interest on the amount payable at the time of payment. And, for the true and faithful performance of all and every of the covenants and agreements above mentioned, said parties bind themselves each to the other in the penal sum of $1,000, which is deposited in McCune City Bank, as liquidated damages to be paid by the failing party. In witness whereof the parties to the presents have hereunto set their hands the day and year first above written."

Defendant filed a motion to require plaintiffs to elect upon which cause of action set forth in the complaint they sought to obtain judgment, whether on contract for breach of warranty or in tort for fraud. The motion was overruled.

The answer denied having made any warranty or having fraudulently changed the cost marks of any of the goods, or, having made any false and fraudulent misrepresentations as to their cost price. The only instructions given by the court, of which defendant complains, were as follows:

"3. I charge you that by the terms of the contract between the plaintiffs and defendant, and which has been read in evidence before you, the defendant agreed to sell and deliver the goods, wares and merchandise described in said contract, to the plaintiffs at what they cost the defendant at wholesale in Kansas City, Chicago or St. Louis; that, under this contract, the defendant obligated himself to deliver said goods to the plaintiffs at that price, notwithstanding the goods at the time of the sale and delivery may have been of greater or less value than the cost of the same at wholesale prices at said places.

"4. I charge you that if you find from the evidence that the defendant invoiced and charged the goods, wares and merchandise to the plaintiffs at a price above what they cost the

defendant, or those who first purchased them, at wholesale at said places, and that the plaintiffs have settled with the defendant above the wholesale cost of said goods at said places, then you should find for the plaintiffs for the amount you find the defendant charged them in excess of the wholesale cost of said goods and merchandise, with 6 per cent. interest on said sum from the date of sale to the present time."

The following, among other instructions asked by defendant, were refused:

"6. The plaintiffs have alleged that the defendant fraudulently misrepresented to them the wholesale cost of the goods, and that the defendant fraudulently changed the cost mark of said goods. If, at the time the contract between R. M. Thornton and the defendant was entered into, Thornton or his agent could have inspected the goods and the cost marks, and have determined for himself whether or not said representations were true, then it became his duty as an ordinary prudent man to acquaint himself with the facts concerning the prices of said goods and the cost mark; and if he failed to do so, he can not now be heard to complain.

"7. If you find from the evidence in the case that R. M. Thornton, or his agent, Mr. Coffey, who was helping to invoice the goods, had any notice of any kind that the goods were marked and being invoiced too high, then it was his duty to repudiate the contract; and if he failed to do so, and consummated the contract, he can not be heard to complain. Whatever is notice enough to excite the attention of a man of ordinary prudence, and call for further inquiry, is notice of all facts to the knowledge of which an inquiry suggested by such notice, and prosecuted with due and reasonable diligence, would have led. If you find from the evidence that the plaintiffs had actual notice of circumstances sufficient to put a man of ordinary prudence on inquiry as to the cost price and the cost mark on the goods sold by Mason to Thornton, the knowledge which they might, by exercise of reasonable diligence, have obtained will be imputed to them; and if you find that the plaintiffs, or their agent, Mr. Coffey, did have such notice as is described in this instruction, and failed to acquaint themselves with the facts, then they can not be heard to complain, and you will find for the defendant.

There was a verdict for plaintiffs for the sum of $543.53. Defendant has appealed.

*Charles D. James,* for appellant.

The demurrer of appellant and the motion to elect should have been sustained. Sand. & H. Dig. § 5716; 51 N. Y. 181; 57 N. Y. 427; 35 Barb. 425; 5 Hun, 547; Bliss, Code Pl. § 290; 30 Wis. 624; 54 Ark. 560. A warranty is no more a part of a sale than a covenant in a deed is a part of the conveyance. 56 Wis. 174; 21 Fed. 159, 439; 1 Cush. 273; 9 Watts, 55. A liberal construction is placed upon written instruments, so as to uphold them, if possible. Broom, Leg. Max. 540; Beach, Contr. 853; 117 U. S. 129; 23 Fla. 368; 32 Mo. App. 387; 61 N. H. 345; 67 Ia. 576; 10 Pick. 228; 22 Fla. 279. The intention is to be got from the whole of the instrument. 1 Fla. 1; 118 Ill. 17; 37 Minn. 338; 55 Ohio St. 581; 15 Wall. 94; 9 Cyc. 580; 57 Ill. App. 281; 19 La. 17; 42 Md. 229. The word condition is not always to be used in its technical sense. Newmark, Sales, § 298; 13 S. W. 273. The admission of Thornton's testimony was improper. 22 Fla. 279; 1 Green, Ev. § 277; 41 Kan. 386; 3 Pac. 625. When the pleading on the whole shows an action for fraud, there can be no recovery upon a contract. 38 Ark. 338; 3 Kan. App. 364. Fraud is never presumed. 66 Ia. 277; 56 Ill. 254; 1 Tex. 326; 44 Ind. 209; 31 Cal. 180; 51 N. H. 167; 100 Mass. 448; Kerr, Fr. & Mis. 382. The evidence upon the question of fraud must be clear and indisputable. 92 Pa. St. 165; 67 Ill. 270; 60 Md. 404; 14 Fed. 19. The admissions of Mason and Coffey were sufficient to put Thornton on notice as to the price of the goods, and he could not afterwards refuse to accept them. Kerr, Fr. & Mis. § 236; 3 M. & K. 722; Ang. Lim. § 187; 101 U. S. 143. There must have been some trick or contrivance intended to exclude suspicion and prevent inquiry. 24 Pac. 262; Pom. Eq. § 893; 1 Story, Eq. Jur. § 200*a*; 76 Ill. 76; 8 Allen, 130; 9 Mo. 131; 31 Me. 448; 63 N. H. 216; 106 Mass. 567; 46 Ark. 245. The twelfth instruction should have been given. 11 Ark. 66; 19 Ark. 528; 26 Ark. 30.

*J. W. Walker,* for appellee.

This is a suit upon contract, and the court properly instructed the jury that the agreement of Mason was a warranty that the goods would be invoiced and sold at wholesale prices. 50 Vt. 256; 47 Ia. 81; 55 Ark. 299; 47 Ark. 335; Big. Estop. 627; 93 Ind. 480; 103 Mass. 501; 58 Miss. 30; 19 Minn. 32; 38 N. E. 58; 57 Fed. 854. The testimony of Thornton as to the price marked on the goods was admissible. Browne, Parol Ev. 186; 5 Wall. 689; 21 How. 161; 98 U. S. 104; 95 U. S. 23; 22 Vt. 160; 13 Pet. 87; 7 Metc. 354; 2 Cush. 271; 27 Vt. 79; 41 N. Y. 468; 1 Mason, 9; 22 N. Y. 37; 18 N. Y. 502. The contract sued on constituted a warranty. 45 Cal. 573; 15 Gratt. 582; 87 Va. 289; 118 N. Y. 260; 67 Wis. 596; 28 Am. & Eng. Enc. Law, 751; 63 Va. 363; 13 Wis. 600; 8 Bax. 159; 51 N. Y. 202; 78 Ky. 166; 9 N. H. 111.

McCULLOCH, J. · It is urged on behalf of appellant that the complaint states two causes of action, one upon contract of warranty and another for fraud and deceit in misrepresenting the price of the goods sold; that the causes can not be joined in one action; and that the motion of appellant to require an election by plaintiff should have been granted. The complaint is somewhat ambiguous in terms, but it does not state two separate causes of action. It states a good cause of action for fraud and deceit, and should have been treated as such. *Fordyce* v. *Nix,* 58 Ark. 136; *Ross* v. *Mather,* 51 N. Y. 181; *New Orleans, etc. Rd. Co.* v. *Hurst,* 36 Miss. 660; *Supervisors* v. *Decker,* 30 Wis. 624.

We think the learned judge who heard the case below misconstrued the contract of the parties, and misinterpreted the character of the action based thereon. Under the contract sued on, there was no warranty by appellant of the prices of the goods. Warranties in contracts for sales must be either as to title, quality or quantity of the things sold. The contract fixes the prices, or furnishes some basis for its ascertainment. Under this contract, the criterion by which the parties agreed that the prices should be fixed was the marks upon the goods indicating the cost. The recital in the contract was a representation by appellant, the seller, that the marks on the goods truly noted the prices which he paid for them in Kansas City, St. Louis, or Chicago; and if those representations, or the representations

alleged to have been made by him verbally to the purchasers and in his letters, were false and fraudulent, and made with intent to deceive, he is liable.

This court in the recent case of *Louisiana Molasses Co.* v. *Fort Smith Wholesale Gro. Co.,* 73 Ark. 542, in defining the essential elements of liability for fraudulent misrepresentation, said: "In such case the essentials are that representations shall not only be false, but fraudulent. They must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect." Citing *Yeates* v. *Pryor,* 11 Ark. 58; *Hanger* v. *Evins,* 38 Ark. 339; *Johnson* v. *St. Louis Butchers' Supply Co.,* 60 Ark. 387.

To this definition should be added, as applicable to the facts of this case, the further statement that, if the marks on the goods were fraudulently altered by the seller for the purpose of deceiving and cheating the purchaser, or if the seller knew that the marks did not correctly show the actual cost of the goods, and falsely and fraudulently and with intent to deceive represented to the purchaser that they did so correctly show the cost, and if the purchaser, relying thereon, was deceived thereby to his injury, the seller is liable.

The court erred in its instructions to the jury numbered three and four, whereby the jury were told that they might return a verdict for plaintiffs if they found that the goods were invoiced at a higher price than the actual cost to defendant in Kansas City, St. Louis and Chicago, without regard to the question of fraud by defendant. The instructions should have used language following the test herein defined as to liability for fraud and deceit.

Numerous instructions were asked by appellant and refused by the court, some of which embodied the law as herein declared, and should have been given, but we do not deem it important to discuss them here. However, as the case must be tried again, we indicate that the instruction asked by appellant which stated the law to be that if the purchaser could have inspected the goods and cost mark, so as to determine whether or not said representations were true, it was his duty to do so, and, failing in this particular, he can not complain, does not correctly

present the law as applicable to this case. Nor is another instruction asked by appellant correct wherein the law is stated to be that, if the purchaser had notice that any of the goods were marked too high, or any notice sufficient to excite the attention of a man of ordinary prudence and call for inquiry which would lead to the fact that the goods were marked too high, he was barred thereby, and can not complain. This is not the law as applicable to the facts of this case, for it makes the right of the purchaser to recover for the fraud and deceit of the seller depend upon his care and negligence in avoiding the imposition in a matter peculiarly within the knowledge of the seller. If appellant, with design to cheat and defraud appellee, changed the marks on the goods, or, knowing that the marks had been changed, or that they did not correctly state the cost of the goods, falsely represented to appellees that the marks did correctly show the cost of the goods, and appellees relied thereon, then appellant is liable, even though appellees by the exercise of proper diligence could have discovered the imposition. They had the right to rely upon the truth of the representation made by appellant; and if they did so rely upon it, and have been injured, they can recover. "The very representations relied upon may have caused the party to desist from inquiring and neglect his means of information, and it does not rest with him who made them to say that their falsity might have been ascertained, and that it was wrong to credit them." *Graham* v. *Thompson,* 55 Ark. 299; *Gammill* v. *Johnson,* 47 Ark. 335; 14 Am. & Eng. Enc. Law, pp. 120 and 123, and cases cited; *Chamberlain* v. *Fuller,* 59 Vermont, 256; *Hale* v. *Philbrick,* 47 Iowa, 217.

Reversed and remanded for a new trial.