15 So.2d 409

**McCAY v. JENKINS.**

**6 Div. 134.**

Supreme Court of Alabama.

Oct. 21, 1943.

J. T. Johnson, of Oneonta, for appellant.

B. M. Bains, of Oneonta, for appellee.

BOULDIN, Justice.

In 1938, J. J. Jenkins, appellee, a resident of Etowah County, owned a tract of land in Blount County; and on May 13, 1938, sold to appellant, Herman W. McCay, a resident of Blount County, four forties and a fraction of twelve acres in an adjoining forty, being the south portion of the Jenkins tract. A deed was executed describing the lands by government subdivisions, and a fraction thereof, and the purchase money, $1,775, was paid in cash.

The lands sold and conveyed may be more readily envisioned by a free-hand drawing here shown:

Before closing the deal the vendor and purchaser went together over and around the property for the purpose of locating the property and its boundaries.

What occurred on that occasion touching the location of the northern boundary of the three forties running east and west,

and a further inspection of a plat held by Mr. Jenkins in connection with his abstract of title, presented the main issue of fact in this lawsuit.

The Jenkins tract, so far as here involved, was mainly cut-over lands, but had a few small clearings which were being rented by Mr. McCay at the time. Among these was a clearing of fertile bottom lands, containing some three acres, located about the junction of Jordan Creek and Little Warrior River, bounded on the east in part by the creek and in part by the river.

Mr. McCay contended and now contends that Mr. Jenkins pointed out to him, as the northern boundary of the three forties he was buying, a line running east and west through an oak stump standing on the west bank of Jordan Creek. With a boundary so located, the clearing would be within the land conveyed. So contending, Mr. McCay continued to hold possession and claim the clearing as his own land.

In this situation a survey was made by the county surveyor of Blount County. Both parties consented to such survey and each paid half the expenses thereof. By this survey the true northern boundary of the three forties was located 520 feet south of a line running through the oak stump. The correctness of this survey is not questioned.

Mr. McCay, still contending for the line claimed to have been pointed out to him, led to two suits in the justice court, one to recover rents, the other in unlawful detainer, both resulting in judgments for the plaintiff, Mr. Jenkins. Appeals were taken to the circuit court, where the suits were consolidated, and on petition of Mr. McCay the cause was transferred to the equity docket.

Thereupon Mr. McCay filed his bill in equity seeking, in one aspect, a reformation of the deed so as to locate the north boundary of the three forties upon a line running with the oak stump. On final hearing upon pleading and proof the trial court denied relief and dismissed the bill.

We find no difficulty in sustaining the decree denying reformation.

█ Reformation is to make the instrument speak the true intent of the parties. There must have been a meeting of the minds, and a mutual mistake in executing an instrument not expressive of the

common intent; or a mistake on the part of one, and such conduct on the part of the other as to render it inequitable to deny a mutual mistake. The evidence must be clear and satisfactory. The relief sought must be equitable. The court of equity will not, in the name of equity, do inequity. Atlas Assur. Co., Ltd., etc., v. Byrne, 235 Ala. 281, 178 So. 451; Cleckler v. Dawson, 243 Ala. 62, 8 So.2d 415; 53 C.J. 928, § 42; Id. 923, §§ 28 and 29.

█ Quite clearly the parties here negotiated for the sale of four forties, defined by government surveys, and a fraction of twelve acres, in an adjoining forty, a total of 172 acres, or thereabout. Both parties were charged with knowledge that the boundaries were law-made lines. The deed correctly described the property intended to be sold by the vendor and to be purchased by the vendee.

The proposed reformation is to run a line through three other and different forties, 520 feet north of the true line, thus giving the purchaser more than forty-seven acres additional lands, a result never in the mind of either party.

█ Assuming, for present purposes, that the vendor did by mistake point out and represent as a fact that the line was where complainant insists, such representation was that here was the north line of the forties sold and conveyed by the deed. On the above assumption, the right of rescission, or the right to damages for fraudulent misrepresentation leading the purchaser to believe he was getting the valuable clearing mentioned, are remedies wholly different from reformation as here sought. Reeves v. Thompson, 225 Ala. 204, 142 So. 663. The evidence by no means warrants the conclusion that the vendor intentionally and designedly, with intent to deceive, declared the line to be where complainant insists. It does not appear that these internal subdivision lines had ever been run. At most he was merely pointing out approximately where the line would run on the basis of his information, both parties probably being misled by a plat held by Mr. Jenkins as part of an abstract of title to his lands. This plat, as transcribed in the record, does show the junction of the creek with the river a bit south of the quarter section line, but in the forty from which the fraction of twelve acres was conveyed. The true survey, made after this

transaction, shows this junction several hundred feet north of the quarter section line, and north of the east forty conveyed in full by the deed.

 Reformation may often be had to correct mistakes in defining the boundaries of lands conveyed so as to identify the lands intended, but certainly not to pass other and different lands from those intended to be bought and sold, notwithstanding a mistake in pointing out the lines, if such there was. Reformation here sought would be inequitable, unjust. 53 C.J. 932, § 50; Hammer v. Lange, 174 Ala. 337, 56 So. 573.

 The bill, in another aspect, claimed damages suffered because of fraud in misrepresenting the location of the boundary line. The measure of damages, in such event, would be the difference in value of land actually conveyed and what the value would have been if the valuable bottom land in and about the clearing had lain within the tier of forties sold and conveyed.

 Under our law there is a difference between actionable fraud by misrepresentation of material fact and an action for deceit. Code of 1940, Title 7, § 108, reads: "Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

This terse statement is amplified by decisions appearing in annotations to above section.

 Passing over any question of adequate remedy at law, complainant having failed to sustain the equity of the bill for reformation, we do not find it necessary to pass upon the highly conflicting evidence touching the alleged misrepresentations of fact. This because it appears without serious conflict that complainant discovered the fraud, if such there was, more than twelve months before suit was brought, and was bound by the statute of limitations, which was duly pleaded by answer. Title 7, § 26, Code of 1940; Title 7, § 42, Code of 1940; Lovett v. Funderburk, 224 Ala. 634, 141 So. 557, and cases there cited.

 Appreciating this situation, complainant by amendment sought recovery for money had and received.

Such action cannot be maintained in a case of this kind until and unless there has been a rescission, revesting in the plaintiff a right to the return of his money. Day v. Broyles, 222 Ala. 508, 133 So. 269, and cases there cited.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.