**WEIL CLOTHING CO., Inc.**
v.
**GLASSER et al.**
No. 14763.

United States Court of Appeals
Fifth Circuit.
May 20, 1954.

Jos. D. Farish, Jr., Farish & Farish, West Palm Beach, Fla., for appellant.

John A. Paul, Warwick, Paul & Warwick, John A. Paul, West Palm Beach, Fla., for appellees.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

### DAWKINS, District Judge.

Appellant brought this suit for the sum of $15,000, claiming that on or about July 25, 1952, it purchased from defendants, appellees, an entire stock of men's ready-to-wear clothing, consisting of more than 8,648 units and accessories; that defendants represented said merchandise had cost $38,747.24, as shown by the inventory supplied as the basis for negotiation, but indicated willingness to discount cost forty percent on the basis of which appellant bought the entire stock for an agreed price of $23,000; that the goods were shipped to appellant's store in St. Louis and when checked on arrival, there were only 6,038 units which had cost $28,554.11, or a difference of $10,193.13, but on the basis of the negotiated sale, a shortage of $7,-338.78; that the shortage was well known to defendants, but that they knowingly and fraudulently misrepresented the quantity and value as shown on the said inventory, upon which complainant relied to its loss of $7,338.78. Plaintiff accordingly demanded trial by jury and judgment in the sum stated,

$15,000. The court, on objection of defendants, excluded all evidence of loss of profits, and at the conclusion of plaintiff's case, directed a verdict for defendant. Plaintiff appealed and assigns the following errors:

(1) Exclusion of all evidence of loss of profits;

(2) Denial of a trial amendment to conform to the evidence as to profits;

(3) The granting of a directed verdict;

(4) In holding that plaintiff, in spite of the alleged fraudulent misrepresentations, was bound to make its own independent investigation as to what was in stock, and, having failed to do so, was barred from recovery "by the doctrine of caveat emptor"; and finally,

(5) In denying plaintiff's motion for a new trial.

Appellant correctly concedes specifications of error 1 and 2 "deal with one aspect of the prior proceedings", while numbers 3, 4 and 5 "all deal with the same question * * *".

Early in the trial, with Julian B. Cohn, president of plaintiff, on the stand as a witness for plaintiff, after testifying to an alleged shortage of approximately $10,000 in the quantity and value of the merchandise, the following took place:

"Q. If you had received that merchandise in your St. Louis store at the time and place under the conditions where it would be salable during those summer months, could you give us an approximation of how much net profit you could have made, if you had received them?

"Mr. Paul: We object to that question. I don't think there is any element of loss of profits involved in this case.

"The Court: Claimed in the complaint?

"Mr. Paul: I don't recall any element of loss of profits.

"The Court: Let's hear from you on that. First, is it claimed?

"Mr. Farish: Your Honor, we contend that as a result of this shortage, in addition to the actual dollars and cents of number of units short, we suffered damages in the amount of fifteen thousand dollars, which is an attributable element of damages where you have had a shortage in a sale of this kind, so I believe it is well within the elements of our damage clause there.

"Mr. Paul: I would like to be heard on that, if the Court please.

"The Court: All right. I will hear you, Mr. Paul.

"Mr. Paul: Do you want to argue this in the absence of the jury? Here is Paragraph 4—

"The Court: Well, let's let the jury retire. (The jury then retired from the jury box.)

"Mr. Paul: I call Your Honor's attention to Paragraph 4 of the complaint. (Argument to the Court.)

"The Court: I can't agree with you Mr. Farish. I think it ought to have been specifically pleaded. I have serious doubts whether that could be recovered.

"Mr. Farish: We would like to amend our pleadings to cover that.

"The Court: No. I think the case should have been prepared on that basis. I deny your request to amend. Let the jury come in. (The jury then returned to the jury box.)

"The Court: The objection that was made to the last question, Gentlemen of the jury, was sustained. All right."

The court then directed a verdict for defendant.

Appellant complains, first, that the court erred in excluding evidence as to the loss of profits, on the pleadings as they stood, and, secondly, in refusing the trial amendment to conform to the proof. It cites and relies upon a long list of authorities in support of both the right to prove profits and the right to amend, but it is not necessary to review them all.

The plaintiff's evidence, standing alone, tends to support the shortage and values alleged as well as price agreed on. The demand was for a judgment of $15,-000, a little more than twice the alleged shortage on the basis of the price actually paid. It is true there was no specific allegation as to how the damage was to be determined, but we think it may reasonably be assumed that appellant bought the merchandise for resale at a profit. Its demand was that it be made whole for the loss caused by the alleged wilful fraud of defendants. Of course, if based on the loss of profits, it was necessary to prove the amount thereof over and above cost and expenses of transportation and sale in St. Louis from its own store. In view of the sum demanded, this would have entailed a net profit of more than one hundred percent. However, this was a question for the jury after hearing all the evidence.

Defendants' "First Defense" was that the complaint failed to "state a claim upon which relief can be granted"; otherwise, the answer was a general denial coupled with the averment that this was a bulk sale under the Florida law with full opportunity for inspection and evaluation according to defendants' own judgment, and although plaintiff loaded the entire stock so purchased into vans under the eye of its president, no check was made as might have been done had plaintiff seen fit under the circumstances to act on its own judgment and not on representation of defendants. It admitted payment of the purchase price of $23,-000, but prayed that the "suit" be amended to show the true corporate nature of defendant, to wit, The Youth Shop, Inc., and as thus amended it be dismissed as to the individual defendants. Finally, that plaintiff "take nothing by its suit".

At the time of filing their answer, defendants also moved to dismiss the complaint and for a Bill of Particulars, each of which was denied. Although the motion for particulars dealt with other matters, including demands for details as to how and by whom the alleged fraud was

committed, the discrepancies in the number of units, and by whom discovered, nowhere did it ask for any information as to how the damages were to be computed. Yet it was perfectly apparent that plaintiff was claiming something more than twice the value of the alleged shortage in the inventory furnished by defendants. The logical conclusion, it would seem, is that plaintiff was claiming either the difference between what it had paid for the deficiency, according to its net value in the price paid, as damages, or the loss of profits. Under either theory, the nature of the proof would have been the same.

In view of the short pleading provisions of the Rules of Civil Procedure, Rule 8(a), 28 U.S.C.A., plaintiff needed only to make "(2) a short and plain statement of the claim showing that the pleader is entitled to relief" and "(3) a demand for judgment for the relief to which he deems himself entitled." In this instance, the complaint set forth the alleged fraud and misrepresentation knowingly made as to the quantity and cost price of the goods purchased, and the loss through failure to deliver what was contracted for. If defendants were uncertain as to how the damage occurred, their remedy was a motion " * * * for a more definite statement [on the particular point] before interposing [their] responsive pleading." Rule 12(e). This was not done in motion as filed, thus leaving a situation in which plaintiff was demanding the additional sum stated and, by refusing to dismiss the complaint for failure to state a cause of action, the lower court had necessarily held that plaintiff was entitled to some form of relief thereunder. When this was followed by an attempt to prove the loss of profits, both the court and defendants were apprised of the theory or basis of the demand.

Rule 15(b) reads in part as follows:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court *may* allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." (Emphasis by the writer.) Interpretations of this rule are found in Watson v. Cannon Shoe Company, 5 Cir., 165 F.2d 311; Matarese v. Moore-McCormack Lines, 2 Cir., 158 F.2d 631, 170 A.L.R. 440; Fidelity & Deposit Co. of Maryland v. Krout, 2 Cir., 157 F.2d 912; Maryland Casualty Co. v. Rickenbaker, 4 Cir., 146 F.2d 751; Pearl Assurance Co. v. First Liberty National Bank, 5 Cir., 140 F.2d 200.

While it is true that the quoted language does not compel the court to allow such amendments, there is a very plain admonition that he "shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admissions of such evidence would prejudice him in maintaining his action or defense upon the merits." There was no showing of such prejudice, in fact in sustaining the objection to the proposed evidence, the refusal to allow the amendment and the giving of the directed verdict were all apparently based upon the maxim caveat emptor and as stated before, these rulings were in conflict with the earlier overruling of the motion to dismiss for failure to state a claim for relief. The evidence to establish the fraud presented by the plaintiff in chief was such that a fair-minded jury might reach the conclusion that fraud was knowingly committed. We conclude therefore that the court below, in the light of its own rulings, was in error both in sustaining the objection to the testimony and in refusing to permit the amendment, or at least abused its discretion, unless it was right in applying the maxim of caveat emptor. There are two lines of authority as to the right to recover for anticipated profits lost through the fraudulent breach of a contract of sale, such as that involved

here, the majority holding that a recovery may be had where, as here, the only object in purchasing the goods was for resale at a profit to the knowledge of the seller.

> "As a general rule one injured by the commission of a fraud is entitled to recover such damages as will compensate him for the loss or injury actually sustained, and will place him in the same position that he would have occupied had he not been defrauded." 12 R.C.L. 451, Sec. 196.

The very nature of the transaction in this instance was such that defendants were bound to know plaintiff was buying the goods for resale in its St. Louis store for a profit, and it was obvious the undertaking would be fruitless, at least in part, if a substantial part of the stock represented was not there. Otherwise, it may be assumed plaintiff would not have made the contract. Selman v. Shirley, 1938, 161 Or. 582, 85 P.2d 384, adhered to on rehearing, 91 P.2d 312, 124 A.L.R. 1; Thomas v. American Workmen, 1941, 197 S.C. 178, 145 S.E.2d 886, 136 A.L.R. 1; McCay v. Jenkins, 1943, 244 Ala. 650, 15 So.2d 409, 149 A.L.R. 746.

#### Caveat Emptor.

 This maxim applies whenever the purchaser in the particular circumstances has full opportunity to inspect what he is buying but fails to do so, and relies upon mere statements of the seller, which amount to no more than "puffing", "boosting" or the expression of opinion. But, where fraud is knowingly and wilfully committed, under circumstances where there is no reasonable opportunity to discover it, the cases quite uniformly hold that a purchaser in good faith, acting and relying upon such representations is not barred from recovery. Williston on Contracts, Sec. 1516; Suraci v. Ball, 1947, 160 Pa.Super. 349, 51 A. 2d 404; 23 Am.Jur., Sec. 164, p. 975; Strand v. Griffith, 8 Cir., 1899, 97 F. 854, 38 C.C.A. 444; Securities and Exchange Comm. v. Timetrust, Inc., D.C., 28 F.Supp. 34; Mason v. Thornton, 74

Ark. 46, 84 S.W. 1048; see also, Federal Trade Comm. v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L. Ed. 141.

The judgment below is reversed and the case is remanded for further proceedings consistent with the views herein expressed.