285 P.2d 751

Otto BERGER, an unmarried man, and Fred Berger, an unmarried man, Appellants,

v.

Ernest BHEND and John Wiehl and Grace Wiehl, his wife, Appellees.

No. 5780.

Supreme Court of Arizona.

July 5, 1955.

Albert W. Gurtler, Mesa, and Marvin Johnson, Phoenix, for appellants.

Ryley, Carlock & Ralston, Phoenix, for appellees.

PHELPS, Justice.

Appellants, the Bergers, prosecute this appeal from a judgment of the trial court quieting title to certain land described in the pleadings in appellee Ernest Bhend and decreeing that appellants and all who claim under them are without any right whatsoever in and to said real property or any part thereof, and from the order denying appellants' motion for a new trial. The parties hereto will be hereinafter designated by their surnames.

Bhend brought an action against Otto and Fred Berger to quiet title to the

NE¼ of the NW¼ of Section 1, Township 1 South, Range 5 East of G. & S. R. B. & M., Maricopa County, Arizona.

The actual area in dispute, however, consists of approximately 4¾ acres of land indicated by the map incorporated herein and designated therein as the "disputed area". The Bergers plead thereto by filing an amended pleading designated as an answer, third party complaint, and counterclaim. Under permission of the court they brought in to said cause of action as third party defendants John Wiehl and Grace Wiehl, husband and wife, and counterclaimed against the plaintiff Bhend asking, among other things, for a reformation of the deed from the Wiehls to the Bergers.

The 4¾ acres above referred to lie along the west side of an irrigation ditch through which water is taken from the Salt River Valley Water Users' canal which runs along the north side of the NW¼ of section 1. This quarter section is irrigated from east to west and has a slope of about 36 inches across each 40 acres. The ditch has been in existence for 50 years or more. It takes the water from the Water Users' canal approximately 180 feet east of the "forty" boundary line and runs in a slightly southwesterly direction so that when it reaches the south end of said tract it is only approximately 126.8 feet east of the southwest corner of the NE¼ of the NW¼.

The evidence discloses that there was a hill or high place covering approximately three of four acres to the west of the canal which could not be farmed and it was the testimony of Mr. Wiehl when asked by the court:

"Q. How much would it cost to make a ditch on the west side of that fence?

\*    \*    \*    \*    \*    \*

"A. Where the trouble would come would be the lower forty. That lays high and they gave it that slope so that the water would reach the lower end."

In other words the point at which the ditch received the water from the Water Users' canal was chosen in order to get water on the SW¼ of the NW¼ of section 1 because it was high. This last described 40 acres is and has been owned by the mother of Otto and Fred Berger for many years and has been farmed by Otto Berger since 1920 and irrigated through this particular ditch.

In order that the reader of the opinion may more clearly understand the physical situation of the land here involved, we thought it advantageous to incorporate herein a map portraying the Government survey of the quarter section and the ditch and fence which all of the parties involved herein had pointed out to them and who understood it to be the boundaries of the land they purchased at the time the transaction was consummated.

The Bergers have presented eight assignments of error for our consideration, six of which are predicated upon the contention that the court erred in granting judgment for Bhend and against Bergers and in denying Bergers' motion for a new trial upon the ground that the judgment was neither supported by the evidence nor the law.

Assignment No. 6 is based upon the ground that the court found as a fact:

"(a) That Wiehl, Berger, Shepard

DIAGRAM OF CHAIN OF OWNERSHIP

LEGEND
- - - - Irrigation Ditch
x-x-x-x-Fences
Surveyed Boundary
79 Ariz.—12

and Bhend did not agree on a boundary line;

"(b) That the common grantor, Mr. Wiehl, intended to convey:

"(1) Exactly the Northwest Quarter of the Northwest Quarter (exactly 40 acres) to Berger;

"(2) Exactly the east half of the Northwest Quarter to Mr. Shepard (exactly 80 acres)."

We believe a disposition of these assignments will make it unnecessary to discuss assignments Nos. 7 and 8. We further are of the view that the remaining assignments can all be discussed together as in the final analysis they relate to the same thing.

The court made the following findings of fact:

"1. The Court finds that each of the parties mistakenly deemed the North-South private ditch as the true line dividing the Northwest one-quarter of the Northwest one-quarter from the Northeast one-quarter of the Northwest one-quarter at the time of defendant Wiehl's deed to defendant Berger and to plaintiff's predecessor, Mr. Shepard, and that all parties continued in such mistake of fact until after March 20, 1951, when a survey was made at the request of the Federal Land Bank.

"2. The Court finds that as between any of the parties hereto, there was no expressly agreed boundary line, and finds that there was no mutual mistake in legal description contained in the deeds, but only a mistake of the extrinsic fact of actual location of the dividing line.

"3. The Court finds that it was the intention of the common grantor, Mr. Wiehl, to convey the Northwest one-quarter of the Northwest one-quarter to Mr. Berger and to convey the East one-half of the Northwest one-quarter to Mr. Shepard and that the description contained in the instruments accurately described such intent."

The court stated in its opinion previous to the finding of facts that:

"It is the Court's further opinion that all of the parties intended to and did convey the exact land described in their deeds, and that under such a state of facts the Court cannot grant relief by reformation."

The land was described in deeds of conveyance according to a government survey.

The questions raised by the Bergers require an examination of all the evidence material to the issues here involved which, of course, must be considered in the light most favorable to sustaining the judgment of the trial court. With the exception of the SW¼ of the NW¼ of section 1 which has been owned by the mother of the Bergers for many years, the records before us do not show the chain of title to the other legal subdivisions of said quarter section prior to 1945 when John Wiehl and wife owned the E½ and the NW¼ of the NW¼

of said quarter section and in January of that year conveyed the NW¼ of the NW¼ thereof to Otto and Fred Berger. The records do not disclose when Wiehl purchased said property nor when he conveyed the E½ thereof to the Shepards. To sustain a reformation of a deed of conveyance the material facts must be proved by evidence that is clear, convincing and satisfactory. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78.

■ We agree with the court's finding No. 1 above set forth haec verba and believe that the evidence amply justifies the same. But we do not agree with findings Nos. 2 and 3. There being no dispute in the evidence on these questions we are not bound thereby. Mr. Berger, after stating that he purchased the NW¼ of the NW¼ of section 1 from Mr. John Wiehl in January, 1945, was asked the following questions:

"Q. Now at the time you bought that land from John Wiehl did you and Fred go out on the land? A. Sure, we had been on the land, we knew all about it, we knew what we were buying.

"Q. Did he indicate what he was selling? A. Sure.

"Q. What did he tell you he was selling? A. Sold me the whole piece of ground on the west side of the ditch.

"Q. What did he say the east border was at that time, what did John indicate as being the eastern border of the land you bought? A. That fence just east of the ditch.

"Q. He said that that fence here was the border? A. That fence right there.

"Q. Was Mrs. Wiehl there at the time? A. She was there too.

"Q. Did you know at that time, Otto, that that piece you bought and that piece that Mr. Bhend now has were different in area? A. Sure.

"Q. Tell me whether or not at the time you bought it this land was uniformly level and susceptible and subject to cultivation? A. That was all subject to cultivation.

"Q. Was there any obstruction on the land? A. There was high spots but Wiehl removed part of it before he sold it to me, I moved some more of it but it still takes some more.

"Q. Mr. Berger, at the time you and Mr. Wiehl and Mrs. Wiehl and your brother went out on that land when you bought it in January, 1945, and just before that, did you buy that land by the acre or by the field that was there and by the boundaries that were designated? A. I bought it by the boundaries the way it is.

\* \* \* \* \* \*

"Q. Now, Mr. Berger, what was the first notice you had that, so far as the papers were concerned and the deeds were concerned, this parcel (meaning the four and one-half acres) was on the other side of the section line or the

quarter-section line? When did you first find out that this land you had been cultivating and this ditch were, according to the deeds, on Mr. Bhend's side? A. About 30 years ago.

"Q. Well, do you understand the question? When did you first know that somebody claimed you didn't own it? A. That is where Mr. Bhend came in before he bought the place, that is the first time.

"Q. When was that? A. I don't know the dates.

"Q. Was it about a year ago, a little over? A. About two years ago.

"Mr. Bhend is the first man who told you? A. He is the first man who told me that it didn't belong to me.

"Q. Until that time you had been farming this since 1945, taking care of both fences? A. Yes, and still farming it.

"The Court: Did I understand you to say awhile ago you knew you got more than 40 acres? A. Yes, that is why I bought that to get that ditch. I had to clean the ditch to farm up hill."

Mr. Berger at no time testified that he believed the recognized boundary line between his land and that owned by Bhend to be at any other place than along the east side of the irrigation ditch. He and Mr. Wiehl both testified that in many of these farms in the Valley described by legal subdivision the acreage varies considerably from the normal.

It will be remembered there is no privity of contract between the Bergers and Bhend. Bhend comes into this court depending upon the strength of his own title and not on any alleged weakness of the Bergers' title. There is no question of a mutual mistake between Bhend and Bergers. They had no dealings with each other. It is true, as the court found, Wiehl, the common grantor, and the Bergers believed the east fence along the ditch here involved represented the government boundary line between them. The same is true with Wiehl and Shepard when Wiehl conveyed the east "eighty" to him and the same is true as between Shepard and Bhend when Shepard conveyed said east "eighty" to him.

As to the court's finding No. 2 that: "As between any of the parties hereto there was no expressly agreed boundary line," we find no evidence whatever to support such finding.

All the witnesses testified that the 80 acres were bounded by the four fences surrounding it and both the purchaser and the buyer understood this and it was intended that the purchasers were buying the particular land within the fences. With respect to the Berger property the same is true. Mr. Wiehl testified that he intended to sell the property up to and including the ditch and Mr. Berger testified that he intended to buy that particular property. Therefore the finding of the court that there was no expressly agreed boundary line is not supported by a scintilla of evidence. Nor is the

finding No. 3 that Mr. Wiehl intended to convey to the Shepards any property other. than that within the boundaries pointed out to them, nor that the Shepards intended to buy or to sell to Bhend any property other than that pointed out to them, to wit, that area within the four fences surrounding the property.

Counsel for Bhend contends that:

"A contract cannot be reformed for a mistake not in the contract itself or in the writing embodying it but of an extrinsic fact which, if known, would probably have induced the parties to make a different contract."

This statement is found in Krick v. Thompson, 349 Mo. 488, 162 S.W.2d 240, 244, upon which Bhend relies strongly in this case. In support of that proposition of law the Missouri court only cites 23 R.C.L. 321, and Webster v. Stark, 78 Tenn. 406. It will be observed in that case that the court had previously stated in its opinion that:

" 'The Court finds as between these parties that there was not any expressly agreed boundary line, and finds that the mutual mistake was not in the legal description contained in the deeds but was a mutual mistake of fact as to the extent of boundaries conveyed by the deeds to the actual boundary line. And the Court is of the opinion that on such state of facts the Court can grant no relief to defendants.' " (Emphasis supplied.)

The court further said:

" * * * This was not a bargain and sale transaction, in which the parties negotiated for land within specifically understood boundaries at a certain price and the deed failed to comply with the contract actually made because of mutual mistake in describing the land agreed upon as sold. * * * " (Emphasis supplied.)

In the instant case as pointed out above, there were expressly agreed boundaries between the parties specifically understood by them to be the boundaries of the land sold as between Wiehl and Shepard and between Shepard and Bhend and between Wiehl and Berger. The case cited by counsel therefore has no application to the instant case.

Counsel further rely upon McCay v. Jenkins, 244 Ala. 650, 15 So.2d 409, 149 A.L.R. 746. There is a marked difference, however, in the facts of the cases. In that case the vendee claimed that the grantor pointed out to him a line running east to west through an oak stump which constituted the north boundary line of the property sold to him. It was claimed that if this point correctly indicated the north boundary line of the property sold to the vendee he was the owner of approximately three and one-half acres of cultivated land, along a small stream of water crossing the land. By stipulation of the vendor and vendee a survey was made and it was found that the north boundary was 520 feet south of the point where the vendee claimed the vendor

said the north boundary line was located. In that case there was no claim of a shortage of acreage. The claim is merely that the north line of the land is a few hundred feet north of the actual boundary thereof. The vendor denied that he had indicated the location of the north boundary line, which created a sharp conflict on a material issue. In the instant case the boundaries of the East Half of the quarter section was pointed out to Bhend by Shepard as the boundaries of said tract of land and Bhend admitted under oath that he understood he was only buying to the fence east of the irrigation ditch here in question at the time he purchased the property.

The supreme court of Alabama in the case of Wheeler v. Wells, 245 Ala. 336, 16 So.2d 695, 697, where property was conveyed to others by metes and bounds, the boundaries described therein were held to be binding upon subsequent purchasers who had procured a survey of the land to be made, which, if upheld, would give the purchaser of one of the tracts 15 acres instead of 10 acres. The court said:

"So far as appears he [the plaintiff] has the lands purchased, and seeks to move his line west to cover fifteen acres instead of ten acres. * * *"

In the case of Birchett v. Anderson, 160 Miss. 144, 133 So. 129, the owner of a 73-foot lot built two houses on it with a 10-foot driveway between the houses. He conveyed the north lot to the appellee which he described in the deed as being 36½ feet

wide, reserving five feet on the south side thereof for a driveway. Later the south half of the lot was conveyed to the purchaser giving the same width with five feet reserved on the north side thereof for a driveway. Before purchasing the property both parties had pointed out to them by the seller the center line of the driveway as the dividing line between the lots. By mistake the contractor built the house on the north lot so that it was only contributing one and one-half feet to the driveway while the south lot was contributing eight and one-half feet. Two years later the owner of the south lot had a survey made and discovered the mistake. She brought an action to have the true line established. The court held in the above case that the boundaries as pointed out to the purchasers were binding upon both vendees.

The case of Luker v. Moffett, 327 Mo. 929, 939, 38 S.W.2d 1037, is another case where a driveway was pointed out by the vendor as being the dividing line between two lots. The court held that this boundary should be maintained as the dividing line between the parties regardless of the fact that it was shown to be erroneous by a subsequent survey.

The case of Phillips v. Cope, Mo.Sup., 111 S.W.2d 81, is a case where a road dividing a 40-acre and a 20-acre tract was supposed to follow the section line. The true facts were that it did not and that approximately one acre of the 40-acre tract lay south of the road and had been treated as a part of the

20-acre tract for some time. In a suit by the owner of the 20-acre tract to have the deed to the 40 acres reformed to limit it to the area north of the road the supreme court said that the only reasonable inference to be drawn from the circumstance and the actions of the parties as disclosed by the record are that defendant's father considered the strip of ground in question as part of the 20-acre tract and the land lying north of the road as the 40-acre tract; and by the father's deed, he only intended to convey the land north of the road when he conveyed the 40 acres to his daughters and they were under the impression that was all they were receiving. This is exactly the same situation which obtains in the instant case.

In the case of Hart v. Blabey, 287 N.Y. 257, 39 N.E.2d 230, where the attorney for the seller of the land went on to the property with the purchaser and pointed out the boundaries but due to his error in drawing the deed it did not correctly describe the property, the court held the deed should be reformed to correctly describe the boundaries as pointed out.

■ In Net Realty & Investment Co. v. Dubinsky, Mo.App., 94 S.W.2d 1108, 1117, the court said to warrant a reformation of an instrument of conveyance there must be a mistake

"* * * within the written evidence of the agreement something which should not be there, or omit from such instrument something which should be there, or so express their

agreement that it sets forth something different from what was intended, all of which they would not have done but for the erroneous conviction. * * *"

All the authorities we have found support this view. In the instant case the court found that all the parties mistakenly deemed the north-south private ditch as the true line dividing the NW¼ of the NW¼ from the NE¼ of the NW¼ at the time of Wiehl's deed to Bergers and to Bhend's predecessor, Mr. Shepard, which mistake continued until March 20, 1951. The testimony disclosed that it had been treated as the true dividing line for 50 years or more. Bhend testified he believed at the time he purchased the property that he was only purchasing land to said ditch. There was no understanding between the parties that a survey should be thereafter made to determine the correct boundary. There was a survey subsequently made, however, at the request of the Federal Land Bank from whom Bhend was seeking a loan which disclosed that said ditch was not the true line.

■ It is clear from all the evidence that the deed from Wiehl to Shepard and from Shepard to Bhend if based upon the belief that the E½ of the NW¼ of the said section contained 80 acres did not correctly describe the land intended by the parties thereto to be conveyed. All the evidence is to the effect that the property intended by both Shepard and Bhend to be conveyed at the time the transaction was made was bounded on the west by the east fence along

184

the irrigation ditch. The deed therefore did not represent the intention of Shepard and Bhend at the time such conveyances were made, nor did the deed from Wiehl to Berger represent their intention. The intent of the parties at the time the deed is made concerning the boundaries of the land being conveyed must control. The following cases announce the rule to the effect that the intention of the parties at the time the deed was executed must control: Korosic v. Pearson, 377 Ill. 413, 36 N.E.2d 744; Fischer v. Dent, 259 Mo. 86, 167 S.W. 977; Ambarann Corp. v. Old Ben Coal Corp., 395 Ill. 154, 69 N.E.2d 835; Spies v. De Mayo, 396 Ill. 255, 72 N.E.2d 316, and Pittsburg Lumber Co. v. Shell, 136 Tenn. 466, 189 S.W. 879. See also 76 C.J.S., Reformation of Instruments, § 26, p. 353. Many other cases can be found supporting the same thing.

The judgment of the lower court is reversed and the cause remanded with directions to enter judgment for Bergers for reformation of the deed from the Wiehls to them, and that Bhend take nothing by his complaint.

LA PRADE, C. J., and UDALL and WINDES, JJ., concurring.

Note: Justice FRED C. STRUCKMEYER, Jr., did not participate in the determination of this appeal.