4 So.2d 906

## WALLER v. STATE.

### 4 Div. 621.

Court of Appeals of Alabama.

Nov. 19, 1940.

Rehearing Denied Dec. 17, 1940.

Reversed after Remandment May 13, 1941.

Carmichael, Crenshaw & Simmons, of Opp, for appellant.

Thos. S. Lawson, Atty. Gen.; and Willard McCall, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was convicted of the offense of robbery. Code 1928, Sec. 5460, Code 1940, Tit. 14, § 415.

His indictment, arraignment, trial, and conviction, were all in the regular forms provided by law.

No necessity here appears for any lengthy discussion of the details of, or evidence in, the case.

The testimony on behalf of the State was ample—no error intervening—to support the verdict of guilt returned by the jury.

But there was error committed on the trial, for which the judgment of conviction must be reversed.

The State, as a part of its case, sought to show—in fact introduced testimony tending to show—flight on the part of the appellant after the commission (alleged) of the offense charged.

Appellant, to refute this, testified that he spent the night of the alleged crime (it being claimed by the State to have occurred

early in said night) with his father, in the neighborhood of the occurrence. The father did not testify on the trial.

In this state of the evidence the bill of exceptions recites as follows: "In his closing argument to the jury the Solicitor made the following statement: 'It is a significant thing that his (defendant's) father was sitting there and he did not put him on the stand.' Defendant objected to the argument and the court sustained the objection. The Solicitor continued in his argument: 'That is a remarkable thing, gentlemen.' Defendant objected to that statement, the court overruled the objection and the defendant duly and legally excepted."

This court in its opinion on rehearing in the case of McDaniel v. State, 20 Ala.App. 407, 102 So. 788, 791 (certiorari denied 212 Ala. 415, 102 So. 791), said: "It was prejudicial error for the trial court to overrule defendant's objection to that portion of the solicitor's argument commenting upon the failure of the defendant to produce as a witness in his behalf one Pennington, when the witness was within the jurisdiction of the court, and the evidence was equally accessible to the state and the defendant." And see Ala. and Southern Digest, Criminal Law, ☞721½ (1 & 2).

■ The above quotation applies, *mutatis mutandis*, in its full force, here. All that was necessary to present the matter to us for decision was done—that is, the objection by the defendant to the specified portion of the argument of the Solicitor, the overruling of that objection by the court, and the reservation of an exception to this action of the court by the defendant (appellant). American Ry. Express Co. et al. v. Reid, 216 Ala. 479, 113 So. 507; Kennamer v. State, 28 Ala.App. 317, 183 So. 892. ·

The argument of the Assistant Attorney General appearing here for the State, that: "Every presumption would indicate that the last statement of the Solicitor ('That is a remarkable thing, gentlemen') had no reference to the first statement (quoted herein above)" may, indeed, from his standpoint be *ingenuous*. From ours, it is distinctly *ingenious*. Certain it is, though, we believe, *specious* in the extreme.

To us the quoted excerpt from the bill of exceptions means, and means only, that objection by the defendant being made and sustained to the statement by the Solicitor that "It is a significant thing that his (defendant's) father was sitting there (in the court room, as plainly is evident) and he did not put him on the stand," the Solicitor *immediately* continued: "*That* (the fact that 'his father was sitting there and he did not put him on the stand') is a remarkable thing, gentlemen." And that objection to this last statement was duly made, overruled, and exception duly reserved. Any other construction of the said quoted excerpt would do violence, it seems to us, to the plainest rules of common apprehension.

That appellant was injured by this unwarranted and illegal reference to his failing to place on the witness stand his said father—shown to be within the jurisdiction of the court (in fact, in the court room) and equally accessible to the State *and* the defendant (appellant)—is, we believe, obvious.

The judgment is reversed and the cause remanded.

Reversed and remanded.

### On Rehearing.

In our opinion upon original submission we did say, inadvertently, and, as appears, inaccurately: "Appellant * * * testified that he spent the night of the alleged crime (it being claimed by the State to have occurred early in said night) with his father."

What we *should* have said, in order to have been saved the necessity of making this explanation, was that appellant testified as follows, to-wit: "I caught a ride on a car to Crestview. I stayed there all night *and went back home from there. I got back home around 7:00 o'clock the next morning, that is, my father's there in Florala. I stayed there around two hours I reckon.*" (Italics supplied by us).

We do not see that the legal principle, for the violation of which the judgment was reversed, is rendered any the less applicable by the change noted in what appellant *actually swore*. It is still apparent that the testimony of appellant's father would have had a direct bearing upon the question of whether or not appellant, as the State contended, was guilty of flight.

The father was equally accessible as a witness to the State and to the defendant (appellant). He did not testify.

In such situation nothing seems better settled ·than that "permitting solicitor to comment on failure of defendant to call [the] witness" was error—as we held in our original opinion. Ala. and Southern Digest, Criminal Law, ☞ 721½.

We have carefully examined the opinions in the cases cited by the Attorney General in his brief on application for rehearing (viz: Brothers v. State, 236 Ala. 448, 449, 183 So. 433; Arant v. State, 232 Ala. 275, 167 So. 540; Taylor v. State, Ala.App., 198 So. 156,[1] certiorari denied Ala.Sup., 198 So. 156;[2] Anderson v. State, 209 Ala. 36, 95 So. 171; as well as several others), at least one of which we wrote, but, without lengthening our opinion to point out their non-applicability to the situation presented here, it is sufficient that we say that in none of them do we find anything—the slightest thing—that militates against the holding we have announced in our original opinion, or to which, in the light of the correction we have noted in the opening paragraphs of these remarks, we still adhere.

The application for rehearing is overruled.

Opinion extended and corrected; application for rehearing overruled.

## After Remandment.

### PER CURIAM.

■ The judgment of reversal entered by us has been in turn reversed by the Supreme Court; and this case is remanded to us for further consideration in the light of the Supreme Court's opinion.

Ordinarily, and in accordance with the law that prevails (Code 1923, § 7318, Code 1940, Tit. 13, § 95), all that would remain would be for us to enter an order affirming the judgment of the Circuit Court—in obedience to the expressed views of the Supreme Court.

But we feel that an error of *fact* has been committed—for which we may possibly be responsible—and that upon *this* error the opinion by our Supreme Court has been promulgated. If indeed we are correct in this feeling—and it is our best judgment—we are persuaded that it is our duty to the appellant, to the Supreme Court, and to ourselves, to *correct* the facts, so that the Supreme Court can not misunderstand upon what its holding is based.

■ To that end we propose to *re-state* the facts upon which *our* holding was based—thus giving the Supreme Court an opportunity to correct *its* holding—if, as we believe, our *former statement of the facts* shown by the bill of exceptions misled it.

The following quotation—in every respect complete and *accurate,* according to the bill of exceptions filed here—is taken, literally, from the brief filed with us by Hon. D. M. Powell, one of the counsel here representing appellant, to-wit:

"1. To rebut the State's contention of flight the defendant testified on direct examination:

" 'I caught a ride on a car to Crestview. I stayed there *all night* and went *back home from there.* I got back home *around 7:00 o'clock the next morning,* that is, my father's there in Florala. I stayed there around two hours I reckon.' (Emphasis ours.)

"On cross examination he testified:

" 'I stayed in Crestview *all night.* I didn't have folks down there. I stayed around first one place and another. The *next morning* I came back home. I got back home, but don't know who with. I stayed at home about two hours. I did not stay home just long enough to get somebody to carry me to Pensacola.' (Emphasis ours.)

"2. The defendant did not testify his father was in his home during the two hours defendant was there or that he saw his father or his father saw him while he was there.

"There was no evidence in the bill of exceptions showing that the defendant was with his father during his two hours stay at his father's home, and no evidence showing that his father saw him while he was there or knew or did not know that his son, the defendant, was in Florala during the two hours defendant testified he was at his father's home.

"3. There is no evidence in the bill of exceptions showing that defendant's father was present or in court during defendant's trial.

"4. Upon the foregoing statement of facts and those facts alone the solicitor in his closing argument to the jury made the following statement:

" 'It is a significant thing that his (defendant's) father was sitting there and he didn't put him on the stand.' Defendant objected to this argument and the court sustained the objection. The solicitor continued in his argument: 'That is a remarkable thing, gentlemen.' Defendant objected to that statement, the court overruled the

---

[1] 29 Ala.App. 446.

[2] 240 Ala. 148.

objection and the defendant duly and legally excepted.

"5. Other than the quoted testimony of the defendant set out above, there was no evidence in the bill of exceptions to which the remarks of the solicitor addressed to the jury or any portion of said remarks referred."

Upon the facts as thus amplified in appellant's said brief—and which amplification we approve as being in all things correct—we are constrained to believe our Supreme Court would not hold—and never intended to hold—the overruling of appellant's objection to the language of the solicitor: "That is a remarkable thing, gentlemen"—referring as it did, and could only, to the preceding remark: "It is a significant thing that his (defendant's) father was sitting there and he didn't put him on the stand," was not *error*.

We of course have no desire or intention to disregard the holding of our Supreme Court. But we are so clearly of the opinion that its holding in reversing our judgment in this case was made upon an erroneous impression of the real facts disclosed by the bill of exceptions—responsibility for which we are willing to assume—that we are venturing to *correct* that impression.

As the facts *now* appear—and as, doubtless, we should have caused them to appear in our former opinions in the case—it seems that the question being discussed is controlled, plainly, by the opinion of the Supreme Court in the case of Jordan v. Austin, 161 Ala. 585, 50 So. 70, 71. In that case Austin sued (Hiram) Jordan on a note given for the purchase price of a mare. Jordan claimed that whereas the mare was guaranteed to be sound, and that she would work well any where, she was not, and would not. Austin recovered in the lower court. Attorney for the plaintiff, in his argument to the jury, said: "Gentlemen of the jury, why did not the defendant have Faulkenberry and the other witnesses here who worked for him and saw him try to work the mare? Gentlemen of the jury, *why did the defendant not have his wife here as witness, who he said was present at the time of the contract? Not one word do we hear from Hiram Jordan's wife.*" (Italics ours.) Objections were interposed to these statements, and exceptions reserved to the court's declining to rule them out.

Upon appeal, our Supreme Court, speaking through the brilliant, late, lamented, Chief Justice John C. Anderson—but who was at that time simply Associate Justice—said:

"The defendant did not testify that Faulkenberry and the other man saw him try to work the mare when she refused. He merely stated that they were working with him at the time. The trial court should have sustained the objection to so much of plaintiff's counsel's argument as stated, 'Why did not the defendant have Faulkenberry and the other witnesses here who worked for him and saw him try to work the mare?' Morris Hotel Co. v. Henley, 145 Ala. 678, 40 So. 52; Cross v. State, 68 Ala. 476; East T., V. & G. R. R. v. Bayliss, 75 Ala. 466. While, as a rule, there may be an inference unfavorable to the withholding of evidence, *this rule does not obtain where the evidence is equally as accessible to both parties.* Ethridge v. State, 124 Ala. 106, 27 So. 320; Mann v. State, 134 Ala. [1] 20, 32 So. 704; Bates v. Morris, 101 Ala. 282, 13 So. 138. *Nor can there be an unfavorable inference against a party for the failure to produce a witness whose testimony would be simply cumulative.* Jones on evidence, § 18. The defendant and his daughter had both testified to the warranty and the failure of the mare to work, *and the testimony of his wife on the subject would have only been cumulative. Counsel should not have commented on the failure of the defendant to prove these facts by his wife also,* and the trial court erred in not sustaining the defendant's objection to this argument. It may be that when the comment relates to a nonproduced witness, who could only support an examined witness as to an immaterial fact, it would be error without injury. Lide v. State, 133 Ala. 43, 31 So. 953. The absent witnesses referred to, however, in the present case, and their testimony as charged in the argument, related to material facts in the case." (Italics supplied.)

The quotation above seems to be the law of this State—the holdings therein never having been overruled that we can find. True, they were announced in a *civil* case. But, so far as we know, there is no difference in the rule that obtains with reference to litigation over *property,* and that that has for its subject *human liberty,* or life.

Here, again quoting from Mr. Powell's brief: "The defendant did not say either directly or indirectly that his father was at home while he was there. He did not testify that he saw his father, or that his father saw him while he was in his father's home during the two hours he remained there. To say or hold that the defendant testified

172

that his father was at home while he was there, or that his father saw him, or he saw his father during the two hours he remained there, would be mere speculation. There is nothing in this testimony authorizing the Court to hold that defendant's father was there at any time during the period defendant testified that *he* was there, or that there was any testimony in the case showing that defendant's father had peculiar knowledge as to any facts in the case, which defendant was under duty to place before the jury by examining his father as a witness. This being true, the unsworn statement of the solicitor that defendant's father was sitting there and the further statement that it was a significant and remarkable thing that he did not put him on the stand were grossly improper and defendant's objection should have been sustained."

As in the quotation from the opinion in the case of Jordan v. Austin, supra, it is observed that "there [can] be [no] unfavorable inference against a party for the failure to produce a witness whose testimony would be simply cumulative," here, we may remark, that if appellant *had* produced *his* father as a witness, said father's testimony could have been only *cumulative* of or to that of appellant himself. This is an additional reason why appellant's objection to the portion of the argument specified should have been sustained.

We think what we have said will have made clear our reasons for believing that the reversal of our judgment ordered by the Supreme Court was done under a misapprehension by it—caused by our omission to state the full facts bearing on the question at issue—of the real question we decided. In the interests of justice it seems incumbent on us to thus *correct* the facts in accordance with the full reading of the record.

We deem it not amiss to add that it appears not improbable that the argument complained of—and the overruling of objection to which we held to be reversible error—found expression in the verdict of guilty fixing the defendant's punishment at imprisonment in the penitentiary for *twenty years*.

From what has hereinabove been said in our corrected and extended opinion, "After remandment," we feel impelled to again hold, and adjudge, that the former conclusion reached by this court should be reiterated and should stand. In reaching this conclusion we feel there is no impingement upon the provisions of Section 7318 of the Code 1923, as our statement of fact therein stated, and for the reasons stated, present a different premise from that upon which the Supreme Court acted upon this case on certiorari.

Reversed and remanded