132 So.2d 736

**TUSCALOOSA MOTOR COMPANY, Inc.**

v.

**Hayes W. COCKRELL.**

**6 Div. 281.**

Court of Appeals of Alabama.

April 9, 1957.

Rehearing Denied June 18, 1957.

Reversed after Remandment Aug. 19, 1958.

Rehearing Denied Oct. 7, 1958.

Affirmed on Mandate Sept. 5, 1961.

370

---

Ward & Ward, Tuscaloosa, for appellant.

De Graffenried, de Graffenried & de Graffenried, Tuscaloosa, for appellee.

PRICE, Judge.

This cause was submitted upon a motion to strike the assignments of error and dismiss the appeal, and upon the merits.

The motion is made upon the grounds that: (1) The assignments of error filed by appellant, bound with the transcript filed with the clerk, do not bear the certificate that a copy of same has been served upon appellee or his counsel, and (2) That no copy of such assignments were served upon appellee or his counsel, as required by Supreme Court Rule 1, Code 1940, Tit. 7 Appendix.

Counsel for appellant attached to his objection to the motion a certificate of the Clerk of the Circuit Court of Tuscaloosa County to the effect that on the 9th day of November, 1955, counsel for appellant furnished the said circuit clerk the assignments of error to be bound with the transcript and that a copy of the complete transcript, including the assignments of error, was delivered by him to appellee's counsel on or about November 14, 1955.

Counsel for appellant also filed answer to said motion setting up therein that his failure to certify that a copy of said assignments of error had been served on the attorneys for appellee was due to an oversight; that he filed brief for appellant in

said cause on appeal on the 14 day of December, 1955, serving a copy of same on attorneys for appellee, as shown by certificate on said brief; that appellee's counsel filed reply brief on the 30th day of December, 1955, in which brief he joined issue on each error assigned, as shown by page 17 of appellee's brief; that appellee's counsel had before them a complete copy of the assignments of error, bound with the transcript, in time for them to prepare a reply brief to appellant's brief, and that appellee is not shown to have been prejudiced by the failure to comply with Supreme Court Rule 1.

■ We are of the opinion that the granting or overruling of a motion to strike the assignments of error for a noncompliance with Rule 1 is discretionary with the court. It does not appear that the appellee was prejudiced by the failure of counsel for appellant to certify that a copy of the assignments had been served. The motion to dismiss the appeal is overruled.

### On the Merits

The cause was submitted to the jury upon count 2 of the complaint, the common count for money had and received, and counts 6 and 7 claiming damages for deceit. Defendant pleaded in short by consent.

There was a general verdict in favor of plaintiff for $600. Defendant appeals.

The complaint first consisted of counts 1 and 2. It was amended by adding counts 3, 4 and 5, and later amended by adding counts 6 and 7. The defendant filed demurrer to the complaint as first filed, and refiled said demurrer and additional demurrers as the complaint was amended from time to time. Argument in brief directs our attention to pages 3 and 7 of the transcript for grounds of demurrer insisted upon. The grounds of demurrer appearing on these pages take none of the points insisted upon in brief.

■ The evidence tends to show that on January 8, 1953, plaintiff purchased a 1952 Chevrolet automobile from the Tuscaloosa Motor Company, trading in his used Ford automobile, making a cash payment of $28 and executing a conditional sale contract and promissory note for the sum of $1,928.-40 balance due on the purchase price, payable in 24 monthly installments of $80.35 each. The note and the conditional sale contract were negotiable instruments. Commercial Credit Company, Inc., v. Seale, 30 Ala.App. 440, 8 So.2d 199. These instruments were duly transferred and assigned, for value, before maturity, to Associates Discount Corporation.

The plaintiff testified that he went to the Tuscaloosa Motor Company to buy a new automobile but was told that there were no new cars available and was shown a 1952 model automobile which had been used as a demonstrator. Plaintiff examined the automobile, made a test drive, and upon his return had a discussion with Mr. Roy Woodley as to the price of the car. Mr. Woodley said: "With your automobile and $28.-00 there will be a balance of $900.00, plus carrying charge and interest."

Plaintiff agreed to these terms and Mr. Roy Woodley, manager of defendant corporation, asked plaintiff and his wife to wait in the outer office while the papers were being prepared. Roy Woodley left and plaintiff did not see him again that day.

About a half hour later Mr. Bob Woodley brought the papers in and after a lengthy discussion of the mechanical features of the automobile, asked plaintiff: "If I was familiar with the contract which I had bargained with his brother, Mr. Roy Woodley, and I told him I was, and he said the agreement is drawn up like the agreement you made and he laid the papers before me." The plaintiff stated there were several copies and Mr. Woodley checked the places he wanted plaintiff to sign, and that he signed without reading the papers or having them read to him.

Mr. Woodley took the papers into the inner office and returned in a few minutes and told plaintiff the automobile was ready

and handed him an envelope containing copies of the contract and invoice.

Plaintiff stated he had no discussion with Mr. Bob Woodley as to the terms of the contract; that he was in no way prevented from reading any of the papers; that his sole reason for not asking to read them was Mr. Woodley's statement that they were correct; that he did not see any figures on the contract or purchase order at the time he signed, although he would not say they were not there.

On the trip to his home, some four miles from defendant's place of business, plaintiff's wife opened the envelope, examined the papers and called to his attention that they showed a balance due of $1,928.40 instead of $900. When they reached home plaintiff looked at the papers and found that his wife's observation was correct.

However, plaintiff made no complaint as to the alleged overcharge until approximately two weeks later, when he brought the automobile back to defendant to have the wheels aligned. Mr. Woodley said they would do the work but plaintiff would have to pay for it that they didn't guarantee alignment, and "I brought it up that I was terribly disappointed about the price and that I didn't agree to that. He said it was out of their hands; that I should have come in sooner; * * * that they had sold the contract to Associates Finance Company."

Plaintiff identified the invoice which showed the list price of the automobile at $1,564.32. Added charges for freight, power-glide, undercoat, optional equipment, two-toned paint, taxes, insurance, finance charges, etc., brought the total "time price" to $2,601.90. Plaintiff was allowed $645 for his Ford which was traded in. $28.50 was paid in cash.

■■ The law is well settled that when one is induced to enter into a contract by fraud, he has an election of remedies: (1) to rescind the contract and sue for his money back, in which event he must give up possession of the property and restore all the benefits he received under it, or (2) affirm the contract, and sue for damages for the deceit, when he may retain the property, and its other benefits. Day v. Broyles, 222 Ala. 508, 133 So. 269.

"The action for money had and received cannot be sustained by such a transaction, except upon the basis of a rescission." Day v. Broyles, supra; McCay v. Jenkins, 244 Ala. 650, 15 So.2d 409, 149 A.L.R. 746.

In Stanard Tilton Milling Co. v. Mixon, 243 Ala. 309, 9 So.2d 911, 913, the court said:

"While generally a party rescinding a contract for fraud is under a duty to restore the benefits received under the contract before he can rescind, he does not have to do so where the consideration received is without value, or where it is impossible, impractical, or futile to restore the consideration."

Plaintiff does not contend that he has rescinded the contract or offered to return to the defendant the possession of the automobile acquired under the contract. In brief, counsel while admitting the general rule that before an action can be sustained for money had and received there must be a rescission of the contract and an offer to restore the benefits received therefrom, insists that this case falls within the operation of the exception to the rule, above noted, that where restitution is impossible no offer to restore the benefits is required. The brief states:

"The evidence clearly shows that a rescission of the contract was rendered impossible when the appellant sold the conditional sales contract to an innocent purchaser for value without notice. * * * after being informed by the appellant that there was nothing the appellant could do about the contract, as it had been sold, it would have been useless for appellant to have offered to return the automobile which he purchased from plaintiff."

No case upon this point has been found in this State. In Holden v. Advance-Rume-

ly Thresher Co., 61 N.D. 584, 239 N.W. 479, 484, the court said:

"Where one has a right of recision, the right is not qualified by the fact that the party against whom it exists may have parted with the consideration which he would be obligated to return or by the fact of its being merged into a legal obligation of another form. Rescission is available, although a note given for the purchase price has been transferred (Fahey v. Esterley Machine Co., 3 N.D. 220, 227, 55 N.W. 580, 582, 44 Am.St.Rep. 554), and judgment may be rendered in the purchaser's favor, though the note be not paid. But the judgment in such a case should not be absolute but one conditioned for discharge by surrender of the note. See Fahey v. Esterley Machine Co., supra."

The following appears in 78 C.J.S. Sales § 513, at page 184: "However, it has also been held that, where the buyer has paid the price partly in cash and the remainder by note, his recovery is not the full purchase price, but is only the cash paid and the note itself, or its value if in the hands of an innocent purchaser," citing in the note, Seligman v. Duff, 109 Misc. 533, 179 N.Y.S. 419.

The case at bar, we think, falls within the influence of the above cited cases, and under the evidence, the plaintiff was not entitled to recover under the count for money had and received.

The following charge requested by the defendant was refused:

"2. I charge you, Gentlemen of the jury, that if you believe the evidence in this case you cannot render a verdict for plaintiff under Count Two of the complaint."

"The doctrine of error without injury cannot be applied to the refusal of a charge denying the plaintiff's right to recovery under one of the counts of the complaint which was not supported by any evidence,

merely because there was evidence tending to support the other count and the verdict of the jury was probably founded on them." Jordan v. Henderson, 258 Ala. 419, 63 So.2d 379, 381; Simmons v. McClendon, 34 Ala.App. 369, 39 So.2d 787.

For the error pointed out the judgment is reversed and the cause remanded.

Reversed and remanded.

### After Remandment

PER CURIAM.

Appellant's counsel states in brief:

"This cause was not reversed and remanded. The Supreme Court did not direct the Court of Appeals as to what its final opinion or decision should be.

"As the appellant sees it, the Court of Appeals still has the right to make a new and correct finding of facts in this case, and also point out any other errors that were made by the trial court."

The situation with which we are now confronted seems to be similar to that before the court in Waller v. State, 30 Ala. App. 168, 4 So.2d 906, 908.

After remandment this court said:

"The judgment of reversal entered by us has been in turn reversed by the Supreme Court; and this case is remanded to us for further consideration in the light of the Supreme Court's opinion.

"Ordinarily, and in accordance with the law that prevails (Code 1923, § 7318, Code 1940, Title 13, § 95), all that would remain would be for us to enter an order affirming the judgment of the Circuit Court—in obedience to the expressed views of the Supreme Court.

"But we feel that an error of fact has been committed—for which we may possibly be responsible—and that

upon this error the opinion by our Supreme Court has been promulgated. If indeed we are correct in this feeling— and it is our best judgment—we are persuaded that it is our duty to the appellant, to the Supreme Court, and to ourselves, to correct the facts, so that the Supreme Court cannot misunderstand upon what its holding is based.

"To that end we propose to re-state the facts upon which our holding was based—thus giving the Supreme Court an opportunity to correct its holding—" if it so desires.

The only evidence which could in any way have been considered as notice indicating plaintiff's intention to rescind the contract was as follows:

"Q. Mr. Cockrell, did you at any time after that have occasion to go back to the Tuscaloosa Motor Company, and if you did go back, did you have a conversation with anyone about these charges? A. I did. Yes. Approximately, to the best of my memory, about eight or ten or, perhaps, two weeks later I went back to Tuscaloosa Motor Company and asked to have my front wheels realigned. Mr. Woodley told me I would be given a guarantee on the automobile the same as a new automobile guarantee. The front end was terribly out of align and I went in and asked him to realign the wheels. He said they would do it, but I would have to pay for it; that they didn't guarantee new automobile alignings; and I brought it up that I was terribly disappointed about the price and that I didn't agree to that. He said it was out of their hands, that they couldn't do anything about it; that I should have come in sooner; that it was out of their hands; that they had sold the contract to associate Finance Company."

In 46 Am.Jur. Sales, Section 763, the statement is made that "notice of rescission of a contract of sale must be clear and un-ambiguous, conveying the unquestionable purpose to terminate the contract".

The statement of plaintiff set out above could not in our opinion rationally be interpreted to constitute clear and unambiguous notice to defendant of intention and election to rescind. Don McCullagh, Inc., v. Dimitroff, 327 Mich. 656, 42 N.W.2d 775.

We have pointed out in our original opinion that counsel for Cockrell admitted in brief that there was never any contention on plaintiff's part that he had either "rescinded the contract or offered to return * * * the automobile."

To further show that plaintiff never considered the statement to Mr. Woodley as an offer to rescind the contract, we quote again from appellee's brief:

"Appellee respectfully submits that the evidence clearly shows that a rescission of the contract by appellee was rendered impossible when the appellant sold the conditional sales contract to an innocent purchaser for value without notice, the associates Discount Corporation".

The Supreme Court quoted with approval the following statements from Comer v. Franklin, 169 Ala. 573, 577, 53 So. 797: "If the plaintiff had the right to rescind at the time of the offer, then the offer so made, though rejected by the defendant, had the same effect as if it had been accepted by the defendant, and the contract of sale was rescinded, *if the plaintiff chose so to consider it*. Samples v. Guyer, 120 Ala. 611, 24 So. 942; Hayes v. Woodham, 145 Ala. 597, 40 So. 511, and authorities cited."

In order to constitute a "rescission" of a contract of sale there must be an election to so rescind and in order for there to be such an election there must be an intention to so elect. Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380.

And as set out in the Supreme Court's opinion

"A contract of sale is rescinded by one party when, and only when, his intention and election to rescind are clearly, unequivocally, and unconditionally manifested or made known to the other party by notice or some act, conduct, or declaration by the party seeking to rescind or his authorized agent." 77 C.J.S. Sales § 111, p. 821 et seq.

We were clearly of opinion that there was no evidence of a rescission, and that the plaintiff himself did not choose to so consider his statements and actions. On the contrary, as we have heretofore said, in his brief it is stated: "Plaintiff does not contend that he has rescinded the contract." Argument in brief is further directed to setting up reasons for failure to rescind. Therefore, we were convinced that no question for the jury's consideration on this point was presented.

It was the complete absence of evidence of an offer to rescind which prompted us to hold that appellant was due the affirmative charge.

We invite the court's attention to the fact that in the cases cited in the opinion of the Supreme Court as authority for the proposition that a party is not required to offer restoration when he knows it is useless to do, there seems to be no question but that a rescission was shown. In Southern Loan & Trust Co. v. Gissendaner, 4 Ala.App. 523, 530, 58 So. 737, the court said that some of the evidence tended to show the contracts were seasonably rescinded. In St. Louis & S. F. R. Co. v. McCrory, 2 Ala.App. 531, 56 So. 822, 823, it is made to appear that plaintiff's attorney wrote letters to appellant "giving notice that appellee annulled the contract."

We think with the extension of the evidence in this opinion it is apparent that the principles discussed by the Supreme Court do not apply here and the conclusions reached on our original consideration were correct, and that "the former conclusion reached by this court should be reiterated and should stand." Waller v. State, supra.

At appellant's request we further extend the opinion to include the court's action in refusing the affirmative charge in favor of defendant as to counts 6 and 7.

Appellant cites Terry v. Mutual Life Insurance Co., 116 Ala. 242, 22 So. 532, 533, as authority for his contention that the court committed reversible error in refusing the general affirmative charge as to the counts based on deceit. In Terry v. Mutual Life Insurance Co., supra, the court said:

"It is a well-recognized rule that a party signing a contract or conveyance cannot, in the absence of some fraud or deceit practiced upon him by or for the opposite party be heard to say that he did not read the paper, or know its contents. * * * If, however, the opposite party, or his agent, fraudulently represents to the party signing that the contents are such as are materially different from what appears in the instrument, the party signing may in good faith rely upon such representations, and upon subsequent discovery of the fraud he will not be precluded from setting it up and avoiding the instrument."

In the Terry case, supra, "There was no representation at all made by the attorney as to what either of the papers contained."

In the case at bar the evidence was in sharp conflict regarding representations to plaintiff as to the contents of the contract. The evidence presented questions for the jury and the general affirmative charge was properly refused as to counts 6 and 7. Tuscaloosa Truck & Tractor Co. v. Stewart, 37 Ala.App. 279, 67 So.2d 844, certiorari denied 259 Ala. 528, 67 So.2d 846.

Reversed and remanded.

PER CURIAM.

■ Affirmed on authority of Tuscaloosa Motor Co. v. Cockrell, 272 Ala. 1, 132 So.2d 742.